THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EMMITT MURRAY, Defendant-Appellant.

First District (2nd Division)   No. 1—87—2082

Opinion filed February 13, 1990.

Michael J. Pelletier and Roger L. Horwitz, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Lori J. Williams, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Emmitt Murray was convicted of aggravated battery and attempted armed robbery and sentenced to concurrent terms of four years' imprisonment for aggravated battery and 10 years' imprisonment for attempted armed robbery. Defendant appeals, raising as issues (1) whether he was proved guilty of aggravated battery beyond a reasonable doubt; (2) whether he was proved guilty of attempted armed robbery beyond a reasonable doubt; and (3) whether he was denied a fair trial on the ground that the trial court improperly assumed a prosecutorial role in questioning a witness at trial. We affirm.

Len Zeimys, the victim in this case, testified that at 2 p.m. on June 6, 1986, he was driving with Greg Tweedy near 34th and Halsted Streets in Chicago. Zeimys was carrying $1,500 in cash which he intended to deposit in his bank account. He dropped Tweedy off at 34th and Halsted Streets and then remembered that he needed to buy

a pair of shoes for his son in a nearby shoe store. He drove around the block and parked on 34th Street, about 50 feet east of Halsted. As he walked toward the shoe store, he removed the $1,500 from his pocket, put two $20 bills into his right pocket, and put the rest of the money into his left pocket. He then turned the corner onto Halsted and looked through the shoe store window.

At that point, defendant approached Zeimys from behind, grabbed him around the neck, and pushed him toward the street. Zeimys pulled defendant's arm away, spun around, and saw that defendant was carrying a knife. Zeimys tried to grab the knife and was cut on his hand and face. Defendant tried to run away, but Zeimys held him from behind in a bear hug and screamed for help. Defendant was then subdued by Zeimys, Tweedy, and a third person, and soon thereafter arrested by the police.

During defense counsel's cross-examination of Zeimys, the trial court interjected in the following manner:

"[DEFENSE COUNSEL]: Okay, as you were turning around that's the point at which you felt pressure on your neck. Is that what you're saying?

A. In the matter of a split. When I turned my head I seen something wasn't right. I grabbed his arm and I started pulling the person's arm and that's when I started feeling pressure on my neck just like—something like this.

[DEFENSE COUNSEL]: Okay. And from there on the struggle that you described ensued. Is that right?

A. It began then, yes.

THE COURT: Was anything said during that struggle?

A. As I was being pushed toward the car, there was a car that came up and I felt like I was being pushed towards the car with this physical motion, okay and there was something said about money. He told me something. I couldn't—it was definitely money. What came before or after—I definitely heard money. Like I say, it was just that fast.

[DEFENSE COUNSEL]: So the only word that you heard from the person's mouth was money. Is that right?

A. There was some words said but money was definitely part of it."

No other questions were asked by the trial court regarding what defendant had said to Zeimys.

Greg Tweedy testified that one or two minutes after Zeimys had dropped him off, he heard two people shouting, turned around, saw Zeimys and defendant fighting, and ran to help Zeimys. Tweedy did

not know how the fight began.

Officer Mike Rogers testified that he arrived at the scene at 2:29 p.m. on June 6, 1986, responding to a call of a street fight, and saw defendant struggling with three white men. One of the white men wrested a pocket knife from defendant's hand and gave it to Rogers. Rogers then joined the struggle, handcuffed defendant, and placed defendant under arrest.

The State rested, and defendant then testified on his own behalf. He stated that on June 6, 1986, between 2 and 2:30 p.m., he was in the vicinity of 35th and Halsted Streets. He crossed the street and a man in a truck, whom the defendant identified as Zeimys, yelled: "Nigger get your ass out of the street." Defendant kept walking and heard footsteps when he reached the corner of 34th and Halsted Streets. He turned his head and saw Zeimys, who grabbed him around the neck and choked him. Defendant then pulled out a pocket knife, reached over his right shoulder with his right hand, and cut Zeimys twice. Tweedy then ran up, grabbed defendant's arm, and hit him in the face. Defendant yelled for help and was on the ground when the police arrived. He was treated later at St. Anthony's Hospital for multiple trauma to the abdomen, eyes, and head.

I

Defendant maintains first that he was not proved guilty of aggravated battery beyond a reasonable doubt. He argues that Zeimys' version of the events was so improbable that it was contrary to human experience and should not have been accepted by the trial court. We disagree.

In assessing the sufficiency of the evidence supporting a conviction, the reviewing court must decide whether, after examining the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes at issue beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472-73.) Reversal of a conviction is required only where the defendant can show that the evidence is so unsatisfactory or improbable as to create a reasonable doubt of defendant's guilt. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) A conviction may rest upon the testimony of a single witness, if positive and credible, even though his testimony is contradicted by the accused. (*People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) The reviewing court will not second-guess the trier of fact's evaluation of the credibility of the witnesses, the weight to be given their

testimony, and the inferences to be drawn from the evidence. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

■ In this case, sufficient evidence to sustain defendant's conviction for aggravated battery is present in Zeimys' testimony alone. The trial court plainly credited Zeimys' version of the events and rejected defendant's testimony. The trial court noted specifically that the stab wounds suffered by Zeimys were consistent only with Zeimys' description of each persons' position during the struggle. The trial court also did not believe defendant's testimony that he found the knife used in the attack shortly before the incident and was not familiar with using a knife.

*People v. Smiley* (1975), 32 Ill. App. 3d 948, 337 N.E.2d 290, relied on by defendant, is inapposite. In that case, the complaining witness testified that he heard noises in back of his house, investigated, found the defendant looking through his garbage cans, asked the defendant what he was doing, and was then attacked by the defendant. The defendant testified that the complaining witness instigated the fight, but was nevertheless convicted of battery. The appellate court reversed on the ground that the complaining witness' testimony was contrary to human experience. Plainly, the appellate court found the evidence so improbable as to create a reasonable doubt as to the defendant's guilt. Here, however, we find Zeimys' version of the events entirely believable and consistent with human experience.

## II

Defendant maintains next that he was not proved guilty of attempted armed robbery beyond a reasonable doubt. He argues that there was no evidence that he knew Zeimys was carrying a large sum of money and Zeimys' testimony that he heard him mention the word "money" during the struggle was not sufficient to establish the requisite intent. We disagree.

■ ■ The intent to commit a crime can be inferred from the conduct of the accused and all the surrounding circumstances. (*People v. Terrell* (1984), 99 Ill. 2d 247, 459 N.E.2d 1337.) Where defendant is charged with attempted armed robbery, the prosecution can obtain a conviction despite the fact that no evidence of a specific demand for money is made, if surrounding circumstances are sufficient to establish the requisite intent. *People v. Mulcahey* (1978), 72 Ill. 2d 282, 381 N.E.2d 254.

■ In this case, the trial court reasonably inferred from the timing of the attack shortly after Zeimys had removed a roll of money from his pocket, and from defendant's apparent demand for money,

that defendant intended to rob Zeimys. Accordingly, we conclude that sufficient evidence was adduced at trial to sustain defendant's conviction for attempted armed robbery.

## III

Finally, defendant maintains that he was denied a fair trial because the trial court improperly assumed the role of the prosecutor when it asked Zeimys whether anything was said during the struggle and improperly relied on Zeimys' response in finding sufficient proof of attempted armed robbery. Again, we disagree.

■ It is an abuse of discretion for the trial court to assume the role of an advocate. (*People v. Galan* (1986), 151 Ill. App. 3d 481, 483, 502 N.E.2d 853.) The trial court may nevertheless question a witness "to elicit the truth or to bring enlightenment on material issues which seem obscure." (*People v. Palmer* (1963), 27 Ill. 2d 311, 314, 189 N.E.2d 265; *People v. Wesley* (1959), 18 Ill. 2d 138, 163 N.E.2d 500.) But the court must question the witness "in a fair and impartial manner, without showing prejudice or bias against either party." (*People v. Gilbert* (1957), 12 Ill. 2d 410, 415, 147 N.E.2d 44, 47.) Whether the trial court's questioning is proper is determined by the circumstances of each case and rests largely in the discretion of the trial court. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 100, 136 N.E.2d 817; *People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534.) This is especially true where the defendant is tried without a jury and the danger of prejudice to the defendant is lessened. *People v. Palmer*, 27 Ill. 2d at 315, 189 N.E.2d at 268.

■ In this case, defendant argues that the trial court improperly assumed the role of the prosecutor, not because the question put to the witness showed bias or prejudice, but because the question elicited a response that established a material element of the State's case, which the State otherwise failed to prove. We do not believe, however, that the trial court improperly assumes the role of the prosecutor merely because its unbiased and impartial questions elicit evidence material to the State's case. To the contrary, "[i]t is the judge's duty to see that justice is done, and where justice is liable to fail because a certain fact has not been developed or a certain line of inquiry has not been pursued it is his duty to interpose and either by suggestions to counsel or an examination conducted by himself avoid the miscarriage of justice[.]" (*People v. Franceschini* (1960), 20 Ill. 2d 126, 132, 169 N.E.2d 244; *People v. Bolton* (1927), 324 Ill. 322, 329, 155 N.E. 310; *People v. Lurie* (1917), 276 Ill. 630, 641, 115 N.E. 130.) Thus, the trial judge "may act to ensure that evidence essential to the proper dispo-

sition of a case is not inadvertently omitted." (*People v. Galan*, 151 Ill. App. 3d at 483; *People v. Walter* (1980), 90 Ill. App. 3d 687, 688-89, 413 N.E.2d 542.) The only limitation to this rule is that the judge must not forget his function and "assume that of the advocate." *People v. Franceschini*, 20 Ill. 2d at 132.

In *Lurie*, for example, the court reversed the defendant's conviction only because the judge "frame[d] his questions as to intimate [an] opinion as to the credibility of [the] witness[es]." (See *People v. Lurie*, 276 Ill. at 641-42.) In *Franceschini*, the trial court properly advised the State, at the close all the evidence, that proof of breaking and entering was lacking, and properly allowed a State's witness to then testify to that material element of the charged offense. (See *People v. Franceschini*, 20 Ill. 2d at 131-32.) Similarly, in *Bolton, Galan*, and *Walter*, the trial judges properly acted to ensure that evidence material to the prosecution was brought forth.

In this case, as in the cases cited above, we find no abuse of discretion in the single, completely neutral question asked of Zeimys, which neither reflected on Zeimys' credibility, nor exhibited any bias on the part of the trial court. The trial court here did not repeatedly interrogate or lead the witness as in *Lurie*, or elicit inadmissible hearsay evidence as in *People v. McGrath* (1967), 80 Ill. App. 3d 229, 224 N.E.2d 660, relied on by defendant. Without assuming the role of the prosecutor, the trial court here, as in *Franceschini, Bolton, Galan*, and *Walter*, merely assured that evidence essential to the proper disposition of this case was not omitted.

The cases relied on by defendant are all inapposite. *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491, involved interrogations reflecting on the credibility of witnesses before a jury. Here, by contrast, defendant was not only tried before the bench, but the single question put to Zeimys was entirely neutral and reflected no bias whatsoever on the part of the trial court. *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, involved a bench trial, but is distinguishable from the present case on the ground that the trial court there called and examined each of the State's witnesses, clearly assuming the role of the prosecutor. As noted above, *McGrath* is distinguishable on the ground that the interrogation there elicited inadmissible hearsay evidence upon which the trial court relied in finding the defendant guilty.

We do not intimate that the trial court should in any way take over management of material and sensitive components of a criminal trial. We note that one commentator, a trial judge himself, has suggested that judicial questioning is a relatively inefficient means of get-

ting at the truth since the trial judge is far less familiar with the issues and the facts of a case than are the attorneys, and is thus as likely to impair the adversary process through his or her participation as to advance it. (Frankel, *The Search for Truth: An Umpireal View*, 123 U. Pa. L. Rev. 1031, 1041-45 (1975).) We simply conclude that the trial court in this case did not abuse its discretion by asking Zeimys whether anything was said during the struggle.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.