THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST WITHERSPOON, Defendant-Appellant.

First District (6th Division) No. 1—89—2899

Opinion filed June 28, 1991.

Flader & Haces, of Chicago (Richard Flader, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Margaret Iwerebon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, Ernest Witherspoon, was convicted of possession of a controlled substance and cannabis with intent to deliver, and sentenced to a 12-year term. Defendant appeals, alleging that the court erred in denying his motion to quash arrest and suppress the evidence; in denying his request for disclosure of the informant's identity and not compelling the informant to testify; that the search warrant was improperly served; and that he was not proved guilty of possession with intent to deliver beyond a reasonable doubt.

Defendant filed a motion pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, seeking to quash the warrant and the arrest, and to suppress the evidence seized. Defendant contended that the complaint for the search warrant was based upon the testimony of an alleged informant, and that the police officer could not verify the information supplied to him. Defendant pled an alibi defense.

At the hearing, Chicago police detective James Dwyer testified that on November 24, 1986, at approximately 4 or 5 a.m., he received a telephone page from an informant. Dwyer returned the call and learned that the informant had just purchased drugs from an individual named "Spoon" at 2123 West 119th Street, apartment 5, in Blue Island. The informant described "Spoon" as a male black, approximately 5 feet 7 inches, weighing 200 pounds, 40 to 45 years old. Dwyer had knowledge that the informant was a drug user. The informant inhaled the cocaine purchased from "Spoon" and received the same effects as when he previously used the drug. Later that morning, Dwyer drove to the address supplied to him by the inform-

ant and found defendant's surname, "Witherspoon," on a small card on the door of apartment 5.

Dwyer obtained a search warrant based upon his belief that the information received from the informant was reliable. Dwyer had used information from the informant on two other occasions during the preceding three months and that information led to seizures of controlled substances in both instances. The search warrant described "Spoon" as per the description given to Dwyer by the informant.

John Jones, owner of a Seven-Day Mini Mart (Mini-Mart) where defendant was employed, testified at the *Franks* hearing that on Friday, November 21, 1986, defendant took a weekend trip to Detroit with Curtis Sanders to visit his daughter. According to Jones, defendant came into the store on Friday morning, November 21, 1986, at approximately 10:30 a.m. prior to going to Detroit; and returned on Monday, November 24, 1986, at 3 p.m. when he arrived back in town.

Barbara King testified that defendant and Sanders arrived at her home in Detroit on November 21, at 6 p.m., and spent the weekend with her. King prepared breakfast on the morning of November 24 for defendant, Sanders, and Walter Jordan, who had dropped over to say goodbye. Defendant's cousin, Lester Wallace, also came to visit before defendant and Sanders left to drive back to Chicago at 9 a.m.

Defendant testified that he signed a one-year lease for the apartment in Blue Island, but at the time of his arrest he was living with his girl friend and their son in University Park South. During November 1986, defendant occasionally dropped by the Blue Island apartment to check on things, but had given the apartment to his friend, Patrick Jones, until the lease expired. Jones, as well as several other friends, had keys to that apartment. According to defendant, the rent was paid by whoever was living in the apartment and he forwarded it to the landlord. Electric service in the apartment was listed under defendant's name.

Defendant stated that he spent the weekend at King's house in Detroit; that he arrived on Friday at 6 p.m. and departed on Monday morning at 9 a.m. following breakfast with King, Wallace, Jordan, and Sanders. Defendant further testified that he never returned to Chicago during that weekend.

Affidavits in support of defendant's *Franks* motion were submitted by Jones, Sanders, Jordan, Wallace and King concerning defendant's activities from November 21 through November 24, 1986.

After review of the affidavits and testimony presented by the defense and by Dwyer at the *Franks* hearing, the trial judge concluded that defendant had not offered sufficient evidence to support his con-

tention that the police acted without knowledge and in reckless disregard for the truth in obtaining the warrant.

On May 17, 1989, another pretrial hearing was conducted on defendant's second motion to quash the arrest and suppress evidence based on the police officers' failure to comply with the "knock and announce" rule. In that motion, defendant argued that the search warrant was never served upon him until after an extensive search of the apartment was conducted and controlled substances and cannabis were discovered.

Defendant testified that he met with James Wright at the Blue Island apartment at approximately 8:30 p.m. for the purpose of buying life insurance for his daughter. Defendant's nephew, Thomas Earl Wallace, was also present. Defendant heard the car alarm sound on his 1979 Corvette. Defendant looked out the window and saw a man who appeared to be attempting to break into his car. The apartment door was then kicked in, and five or six individuals dressed in plain clothes entered the apartment. Defendant further stated that they did not inform him that they were the police, nor that they had a warrant to search the premises. A gun was pointed at the base of his neck, and he remained in that position for nearly two hours while the apartment was searched. During this time, the men continually asked the identity of "Spoon" and stated that they wanted no less than a key and $100,000. Defendant then heard a voice in the back of the apartment shout "Bingo." At that point, one of the police officers took out the search warrant, placed it into defendant's shirt pocket as they were taking him out the door, and informed him that it was a warrant for his arrest.

Dwyer testified that he arrived at defendant's Blue Island apartment to execute the search warrant at 9 p.m. on November 24, 1986. Dwyer was accompanied by two Blue Island police officers in regulation police uniforms and five plainclothes police officers wearing baseball style hats bearing the Chicago police department emblem and bulletproof vests.

Dwyer further testified that he knew defendant drove a 1979 Corvette and that it was parked adjacent to the building when he arrived at the apartment. Dwyer shook defendant's car intentionally to activate the car alarm. It was Dwyer's intention to implement this "ruse" so that defendant would exit the apartment, thereby simplifying the execution of the search warrant.

Dwyer testified that they stopped defendant when he walked out of the apartment, went back inside with him, and handed him a copy of the search warrant. Dwyer stated that they did not force entry into

the apartment. The search lasted approximately 30 to 45 minutes. Inside a drop panel in the drop ceiling, the police uncovered a crushed green plant later identified as 240 grams of cannabis. On the kitchen table, a "pony packet" was found containing .01 grams of cocaine. As the search proceeded into the bathroom, the police found 133.42 grams of cocaine underneath a plastic liner in the wastebasket. A shotgun and a .380 semi-automatic pistol were found underneath a mattress in the bedroom. A triple beam scale was discovered in a kitchen cabinet. At the time of his arrest, defendant had $1,431 in cash in one of his pockets. A light bill listed under defendant's name was found on a bedroom dresser. Blue Island police officer William Sanchez corroborated Dwyer's testimony.

The court denied defendant's second motion, basing its finding upon the credibility of the police officers' testimony. The court found that the police officers successfully lured defendant out of the apartment by activating his car alarm and that the police officers properly served him with the search warrant and entered the apartment to conduct the search.

At trial, Corporal Craig T. Kincaid of the Blue Island police department corroborated the testimony of Dwyer and Sanchez. Kincaid testified that he participated in the raid of defendant's apartment on the night of November 24, 1989, and that he was in uniform. Kincaid testified that there were no signs of forced entry and that the door was intact.

Officer William Facchini testified at trial that after defendant was placed under arrest, he requested a jacket before exiting the apartment. Facchini and Dwyer accompanied defendant back to the bedroom, where he selected a jacket. Defendant also asked whether his nephew could remain behind to straighten up the apartment. Facchini observed defendant take a key ring out of his pocket, hand it to his nephew, and identify the keys to the apartment and the Corvette.

Defendant's fiancee, Ingrid Harris, testified for the defense. Harris is the mother of defendant's two-year-old son and also works at the Mini-Mart. She began living with defendant in August 1986. Harris testified that defendant's clothing and personal items were kept in her apartment in University Park South and that he would leave there each morning and return each night. Harris further testified that Patrick Jones was the tenant in the Blue Island apartment after defendant left to live with her and that he handed all the keys to the apartment over to Jones.

Avor Cooley, the girl friend of Patrick Jones, also testified for the defense. (Jones, who was also employed at the Mini-Mart, was killed

in a fire in December 1988.) Cooley testified that she moved into the apartment in Blue Island with Jones in August 1986 and that they lived there through the end of March 1987. She and Jones had the only keys available to the apartment, but she did not recall the day that they moved into the apartment or name of the landlord. (Previously, Cooley lived with her mother at 1234 West 127th Street. When Cooley's daughter, Aisha, was born on March 3, 1987, Cooley listed her address as 1234 West 127th Street on the hospital form.) Cooley also stated that she had clothes in the Blue Island apartment.

Cooley further testified that on the evening of November 24, 1986, she unlocked the apartment door for defendant and his nephew. Cooley stated that defendant's nickname is "Spoon," but upon further questioning, she stated that he was called "Spoon" only after his arrest.

James Wright, the accountant at the Mini-Mart, also testified for the defense. Wright went to defendant's Blue Island address on November 24, 1986, at 8:30 p.m. to sell him some insurance. After hearing the car alarm, defendant proceeded through the living room toward the front door; however, the door burst open and several men carrying guns and sledgehammers entered the apartment. Wright stated that the door lock was damaged. The police searched all three men, but failed to uncover any narcotics.

After the arrest, Wright left the apartment with defendant's nephew and proceeded back to the Mini-Mart. Wright informed Jones about the raid and defendant's arrest. Wright stated that defendant was living in University Park South in November 1986. Wright testified that defendant earned approximately $64 per day at the Mini-Mart.

Officer Henry Cross testified for the State in rebuttal. Cross also participated in the November 26, 1986, raid on defendant's apartment. Cross testified that the officers did not exert any force to gain access to defendant's apartment. The police did not find any women's clothing inside the apartment.

Harris testified for the defense in rebuttal. Defendant allowed the electric bill to remain in his name so that Jones, who had just moved to town, would not have to provide a down payment.

The jury found defendant guilty of possession of cannabis with intent to deliver more than 30 grams but less than 500 grams in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 705(d)), and guilty of possession of cocaine, with intent to deliver more than 30 grams in violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par.

1401(a)(2)). The court denied defendant's motion for judgment notwithstanding the verdict and motion for a new trial, and entered judgment on the verdicts.

After taking into consideration defendant's 1976 conviction for Federal bank robbery and attempted murder for an Alabama offense (with a consecutive State sentence), the court sentenced defendant to a 12-year term. (Defendant had been incarcerated from 1976 through 1985.)

On appeal, defendant initially assigns error to the court's denial of the *Franks v. Delaware* motion to quash arrest and suppress evidence. Specifically, defendant argues that the search warrant was obtained without knowledge and in reckless disregard of the truth, and that the court erred in refusing to order the informant to be called as a witness.

Defendant contends that the denial of his *Franks* motion was against the manifest weight of the evidence presented at the hearing. Defendant argues that the State only produced the testimony of Dwyer based on information from an undisclosed informant who did not testify at the hearing. Defendant asserts that the information supplied on the complaint erroneously describes "Spoon" (approximately 5 feet 7 inches, 200 pounds, approximately 40 to 45 years of age) in contrast with defendant's actual size (5 feet 10 inches, 180 pounds and 32 years of age). Defendant presented five affidavits and testimony from four witnesses and himself advancing an alibi defense: that he was in Detroit on November 21, 1986, and did not return to Chicago until the afternoon of November 24.

■ Under *Franks v. Delaware* the defendant is required to make a "substantial preliminary showing" that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 533 N.E.2d 409.) An alibi-type showing can suffice as a "substantial preliminary showing," for the determination is based on the balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant. *People v. Friend,* 177 Ill. App. 3d 1002, 533 N.E.2d 409, citing *People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269.

Under *Franks,* a defendant is entitled to a full evidentiary hearing on his motion to suppress evidence if he makes allegations of the affiant's deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. (*People v. Martine* (1985), 106 Ill. 2d 429, 435, 478 N.E.2d 262.) "So long as the trial court's judgment is exercised within permissible limits, [the court's] judgment will not be

disturbed." *People v. Lucente,* 116 Ill. 2d at 153; *People v. Tovar* (1988), 169 Ill. App. 3d 986, 990-93, 523 N.E.2d 1178.

The purpose underlying the *Franks* rule is to provide meaningful, although limited, deterrence of, and protection against, perjurious warrants. (*People v. Friend,* 177 Ill. App. 3d 1002, 533 N.E.2d 409.) When a hearing has been granted, if under all the circumstances the judge doubts the credibility of the police officer, "the judge may require that the informer be identified or even produced." *People v. Garcia* (1982), 109 Ill. App. 3d 142, 151, 440 N.E.2d 269, disapproved by *People v. Lucente* (1987), 116 Ill. 2d 133, 144-46, relying on *McCray v. Illinois* (1967), 386 U.S. 300, 307-08, 18 L. Ed. 2d 62, 69, 87 S. Ct. 1056, 1060-61; see also *People v. Allen* (1987), 158 Ill. App. 3d 602, 608, 511 N.E.2d 824.

■ Supreme Court Rule 412(j)(ii) (134 Ill. 2d R. 412(j)(ii)) provides the circumstances wherein disclosure of an unidentified informant is required:

> "*Informants.* Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial."

The proper application of the informer's privilege involves balancing the strong public policy reasons favoring it against a defendant's need for disclosure in order to prepare his defense. (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Rinaldo* (1976), 34 Ill. App. 3d 999, 1001, 341 N.E.2d 166.) The defendant shoulders the burden of demonstrating need, and our supreme court has recognized that where there is no evidence that the informer either participated in the crime or was present at the time of the arrest, amplification of an informer's statements would be of little assistance to an offender's defense. *People v. Duncan* (1982), 104 Ill. App. 3d 701, 705, 432 N.E.2d 1328, 1331; *People v. Stoica* (1987), 163 Ill. App. 3d 660, 516 N.E.2d 909.

■ Upon review of the record, we agree with the trial court's decision that defendant did not meet his burden of demonstrating the need for disclosure of the informant's identity. Dwyer testified that he had used information provided by the informant on two occasions in the previous three months and that information led to seizures of controlled substances in both instances. Dwyer drove to the Blue Island address provided by the informant and verified defendant's surname, "Witherspoon," on the apartment door, which bears a strong resemblance to "Spoon" (the name supplied by the informant as the individ-

ual from whom he had purchased drugs). There is also evidence in the record that defendant's nickname was "Spoon." While the informant's physical description of "Spoon" varied from defendant's actual size, we note that the drug transaction occurred during the early morning hours of November 24, 1986, which may account for the informant's miscalculations of defendant's age, height and weight.

We find that the court correctly balanced Dwyer's statements and the testimony and affidavits made on defendant's behalf. Therefore, we conclude that defendant was not deprived of a fair *Franks* hearing because the court denied his request for disclosure of the informant's identity.

 Defendant next argues that the search warrant was improperly served on defendant based on a forced entry and failure to "knock and announce." The purpose of the "knock and announce" rule is to notify the person inside of the presence of police and of the impending intrusion, give that person time to respond, avoid violence, and protect privacy as much as possible; however, an exception to the "knock and announce" rule has been created when exigent circumstances exist. *People v. Ouellette* (1979), 78 Ill. 2d 511, 518, 401 N.E.2d 507.

 █ The trial court found the police officers' testimony of the sequence of events leading to the execution of the warrant to be credible. Specifically, the court found that the police officers successfully lured defendant out of the apartment by activating defendant's car alarm, and that he was properly served with the search warrant prior to the time the police began to conduct their search. Officers Dwyer, Sanchez, Kincaid and Cross each testified that the door was intact and that there was no forced entry.

The use of deception to lure a defendant from his home in order to effectuate an arrest without a warrant has been held not to violate fundamental fairness. (See *People v. Sunday* (1982), 109 Ill. App. 3d 960, 441 N.E.2d 374.) Section 108–8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 108–8) provides in relevant part that "[a]ll necessary and reasonable force may be used to effect an entry into any building or property or part thereof to execute a search warrant." Absent the use of force, the employment of a subterfuge to gain entry to a home to execute a search warrant is not prohibited by section 108–8, or by any decision of the courts of this State. *People v. Bargo* (1978), 64 Ill. App. 3d 1011, 382 N.E.2d 83.

Defendant's final contention is that the State failed to prove him guilty beyond a reasonable doubt. He maintains possession with intent could not be inferred from the evidence. Defendant argues that he did

not live in the apartment where the raid occurred, the fact that he was there at the time of the raid was circumstantial, and that he had no knowledge of the existence of any controlled substances.

■ In order to support a conviction for unlawful possession of narcotics with an intent to deliver, the State must establish that the defendant had knowledge of the presence of narcotics, that the narcotics were in the immediate control or possession of the defendant, and that the amount of narcotics was in excess of any amount which might be viewed as merely possessed for personal use. (*People v. Pintos* (1988), 172 Ill. App. 3d 1096, 527 N.E.2d 312; *People v. Knight* (1985), 133 Ill. App. 3d 248, 259, 478 N.E.2d 1082, 1091.) The standard of review of whether a defendant had possession and knowledge of the narcotics is that the fact findings of the trial court will be overturned only where the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and thus creates a reasonable doubt of guilt. (*People v. Pintos*, 172 Ill. App. 3d 1096, 527 N.E.2d 312; *People v. Knight*, 133 Ill. App. 3d 248, 478 N.E.2d 1082.) It is not necessary that the evidence presented at trial exclude every possible doubt, so long as the entire chain of circumstances leads to a reasonable certainty that the accused committed the crime. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801, 804.

■ We believe that defendant was proved guilty beyond a reasonable doubt. He was present in the apartment when the police arrived to execute the search warrant. The apartment was leased to defendant, and the electric service was listed under his name. Officer Facchini testified that after defendant was placed under arrest, he went to the bedroom of the apartment and selected a jacket. Defendant also requested that his nephew be allowed to remain in the apartment after the search to straighten it up, and he handed his nephew keys to the apartment.

In addition, we note Officer Cross testified that there was no women's clothing found in the apartment, conflicting with Cooley's testimony that she was living in the apartment with Jones on November 24, 1986. We also observe that upon the birth of her daughter on March 3, 1987, Cooley listed her address as 1234 West 127th Street, which contradicts her testimony that she lived in the apartment through the end of March 1987.

The record also supports the jury's determination that possession with intent to deliver could be inferred from the evidence. Intent to deliver is necessarily proved by circumstantial evidence (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 472 N.E.2d 175), and a reasonable

inference of intent to deliver narcotics arises from the possession of contraband in excess of any amount that could be designed for personal use. (*People v. Chrisos* (1986), 151 Ill. App. 3d 142, 502 N.E.2d 1158; *People v. Knight*, 133 Ill. App. 3d 248, 478 N.E.2d 1082; *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46.) The inference of intent may be enhanced by the combination of drugs and the manner in which they are kept. *People v. Friend*, 177 Ill. App. 3d 1002, 533 N.E.2d 409, citing *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.

In our view, the quantity of substances involved (240 grams of cannabis and 133.42 grams of cocaine), together with the fact that a scale, a large amount of cash in defendant's pocket, a shotgun and a .380 semi-automatic pistol were discovered, is sufficient circumstantial evidence for a jury to infer that the contraband was possessed with intent to deliver. *People v. Stamps* (1982), 108 Ill. App. 3d 280, 438 N.E.2d 1282.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.