THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHNNIE ROBINSON, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2886

Opinion filed September 30, 1992.

Rita A. Fry, Public Defender, of Chicago (William Bates and Aaron
Meyers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Noreen M. Daly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Johnnie Robinson, was convicted of residential burglary and theft. He was sentenced to an extended term of 16 years' imprisonment. On appeal, defendant asserts that (1) the trial court erred when the trial judge abandoned his proper role as an impartial arbiter and assumed the role of a prosecutor by advising the prosecutor how to prove the elements of the offense; (2) the prosecutor tainted the trial process during closing argument by characterizing the defense as nothing but a smokescreen and demeaning the defense counsel's motives; and (3) the prosecutor's closing argument comment on the failure of defendant to testify violated the self-incrimination clause of the United States Constitution's fifth and fourteenth amendments.

When Scott Davis left his third-floor apartment on April 19, 1988, he locked the passage lock and the middle dead bolt. An hour later, Davis returned to his apartment with a friend. As he got off the elevator on the third-floor, Davis saw a man carrying some articles, including an instrument case that looked like his bass guitar case and a chess set. When he was about 20 feet away, the man stopped and turned into the back staircase entrance, pausing and looking in Davis' direction. At trial, Davis described the man as African-American, approximately 6 feet 1 inch tall, weighing 160 pounds, and wearing a brown rayon shiny shirt, brown cap, and dark pants.

Davis went to his apartment and unlocked the passage lock. He noticed that the plate with the dead bolt was gone and fresh wood chips were in the bolt hole and on the rug. Inside the apartment, Davis' belongings were strewn around the room. While his friend called the police, Davis ran down the back stairs and into the parking lot, where he saw the man starting a car.

Because a large moving van was blocking the car's exit, Davis ran to the car. Seeing the chess set on the front seat, Davis pounded on the windshield and tried to open the passenger door, but the man drove out of the parking lot. Davis identified the car as a mid-1970's coupe with the license plate number, "IB 5796."

Davis ran back to his apartment and gave the police the license plate number over the telephone. When a police officer came to his apartment, Davis reported that his bass guitar, chess sets, and porta-

ble cassette player were missing. He also gave the police officer descriptions of the man and the car.

The next day, Davis went to the police station where he identified his property and viewed a lineup. He told the police officers that he was 99% certain that defendant was the man he saw in his apartment building. At trial, Davis testified that he was not absolutely certain that defendant was the man he saw.

During Davis' testimony, there was a sidebar held where the trial judge reminded and advised the prosecutor to prove the material elements of the crime of residential burglary. The trial judge said:

"State, did you elicit from this witness—I take it he's the owner of this dwelling place, is that correct? Did you ask him any questions about whether or not anyone had permission or authority to enter into the apartment? *** Perhaps you ought to go into the elements at this time. I'm doing that for the purpose of manifest justice in this case."

No objection was made to the trial court's comments, and the prosecutor elicited the information from Davis.

Chicago police detectives Carl Leidy and Craig Groth testified that they checked the license plate number and discovered that it was registered to defendant. Eventually, they arrested defendant at his place of employment.

Detective Leidy drove defendant's car to the police station. After defendant told him where to find the chess set, he recovered it from the car's trunk. The police officers also found hunting knives, which Davis later identified as his. After defendant told the police officers where to find the bass guitar and portable cassette player, the police officers recovered that property. In addition, there were items stolen that were never recovered.

After closing arguments, the jury found defendant guilty of residential burglary and theft. The trial court then sentenced him to an extended term of 16 years' imprisonment based on prior felony convictions.

Defendant asserts that the trial judge abandoned his proper role as an impartial arbiter and assumed the role of a prosecutor when he advised and instructed the prosecutor how to prove the elements of residential burglary. Defendant contends that he was seriously prejudiced because the prosecutor would have failed to prove the material elements necessary to establish a *prima facie* case of residential burglary without the judge's advice.

The cases defendant relies on to support his argument are inapplicable. They all involve the trial judge questioning witnesses. In *People*

*v. Moriarity* (1966), 33 Ill. 2d 606, 613, the trial judge repeatedly took over the questioning and emphasized the defendant's identification, objected while the defense counsel was cross-examining witnesses, admonished the defendant's wife of the penalties of perjury while she was testifying, and harshly reprimanded the defense counsel in front of the jury.

In *People v. Santucci* (1962), 24 Ill. 2d 93, 98-99, the judge repeatedly questioned every witness and showed repeated hostility toward the defense counsel in front of the jury. The court held that the trial judge conducted an extensive examination of witnesses, thus usurping the counsel's function and giving undue prominence to the matters gone into by the judge. *Santucci*, 24 Ill. 2d at 98-99.

The judge in *People v. McGrath* (1967), 80 Ill. App. 2d 229, 236, elicited inadmissible hearsay evidence on which the trial court relied in finding the defendant guilty.

*In re R.S.* (1983), 117 Ill. App. 3d 698, 704, the trial court twice called Lambert, who was a participant in the offense, to testify. After holding Lambert in contempt of court for not testifying, the trial court elicited testimony from him that implicated the minor defendant.

In *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 1051, the trial judge called the State's witnesses, conducted the examinations, and asked questions directed at eliciting testimony to support the allegations against the defendant.

In *People v. Rogers* (1974), 18 Ill. App. 3d 940, 944, and *People v. Anton* (1981), 100 Ill. App. 3d 344, 353, the trial courts properly questioned witnesses in order to clear up ambiguities.

Defendant contends that *People v. Galan* (1986), 151 Ill. App. 3d 481, was wrongly decided. The facts of that case were very similar to this case's facts. In a sidebar conference outside the presence of the jury, the trial court reminded the prosecutor of the necessity to prove additional elements of the offense. *Galan*, 151 Ill. App. 3d at 483.

■ We reject defendant's argument. We first note that defendant waived this argument because he did not object at the time of the sidebar or raise the issue in his post-trial motion. Failure to object at trial and raise an issue in the written motion for a new trial constitutes a waiver of that issue (*People v. Enoch* (1988), 122 Ill. 2d 176, 188) and it cannot be urged as a grounds for reversal on review. *People v. Caballero* (1984), 102 Ill. 2d 23, 31.

Even if the issue had not been waived, however, the judge's suggestion to the State was not an improper assumption of the role of prosecutor. It has been held in other cases that it is not improper for

the trial court to remind the prosecutor of the necessity to prove the elements of the offense.

In *People v. Murray* (1990), 194 Ill. App. 3d 653, 655, during the defense cross-examination of the victim of an attempted armed robbery, the trial judge questioned the victim about what words were uttered by defendant. The question elicited a response that established a material element of the State's case, which the State otherwise would have failed to prove. (*Murray*, 194 Ill. App. 3d at 658.) It was held that questioning by the trial judge was not improper.

In *People v. Franceschini* (1960), 20 Ill. 2d 126, after the State had rested, the trial court expressed a desire to know how entry was gained into the burglarized apartment. The State reopened its case and showed how it was done. Holding that the trial court did not become an advocate, the appellate court affirmed the conviction.

In *People v. Bolton* (1927), 324 Ill. 322, 329, the trial court reminded the prosecutor of the necessity to prove venue.

In *People v. Walter* (1980), 90 Ill. App. 3d 687, 688, the trial court suggested that the State present identification and venue evidence. The suggestion was made outside the presence of the jury, during the State's case in chief, and at the conclusion of a conference on an objection to the testimony. *Walter*, 90 Ill. App. 3d at 688.

Even though it is an abuse of discretion for a trial judge to assume the role of an advocate, he may act to ensure that evidence essential to the proper disposition of a case is not inadvertently omitted. (*Galan*, 151 Ill. App. 3d at 483.) A trial judge may remind the prosecutor of the necessity to prove additional elements, examine witnesses to clarify material issues or eliminate confusion, and advise counsel on the proper phrasing of questions. (*Galan*, 151 Ill. App. 3d at 483-84.) The propriety of the judicial examination is determined by the circumstances of each case and rests largely in the trial court's discretion. *People v. Trefonas* (1956), 9 Ill. 2d 92, 100; *Murray*, 194 Ill. App. 3d at 658.

There was no abuse of discretion in this case. The trial court did not elicit inadmissible hearsay evidence as in *McGrath* or extensively question the witnesses and take over the prosecutor's role as in *Moriarity, Santucci, In re R. S.,* and *Cofield*, on which defendant relied. Without assuming the role of prosecutor, the trial court properly assured that the evidence essential to the proper disposition of this case was not omitted and did so outside the presence of the jury during a sidebar.

■ Next, defendant asserts that the State committed prosecutorial misconduct during its closing argument by characterizing the

defense as nothing but a smokescreen, attacking the motives and objectives of the defense counsel, and appealing to the jury's prejudices in an effort to arouse and inflame its antagonism against defendant and his attorney and to shift the jury's focus away from the evidence and toward efforts to dirty the defense counsel.

Defendant argues that the smokescreen argument is tantamount to accusing the defense counsel of fabricating a defense and attempting to free his client by trickery. Defendant contends that the improper prosecutorial comments were of sufficient gravity to affect the substantial right of defendant to a fair jury consideration of his defense.

At the beginning of her rebuttal closing argument, the prosecutor commented:

> "You know it's as if counsel has created in the midst of this courtroom a huge bond [*sic*] fire and then when he got this fire burning. \*\*\* And it was blinding our eyes. \*\*\* He took one of those little cans with that stuff in it that when you throw it into the fire, all of a sudden everything is smoke. And the whole courtroom here is filled with smoke."

The trial court overruled two defense objections and the prosecutor continued:

> "Smoke is the only thing he's created. He wants to take that finger of guilt which rightfully belongs here and start pointing it up there. That was where you heard the evidence from, ladies and gentlemen, and so now he wants to do the only thing he can to try to convince you that this man did not admit his guilt. And how does he try to do that? By knit [*sic*] picking at each and everything that is and isn't there. By trying to confuse you about what is and isn't there."

The defense counsel objection was then sustained and the trial court admonished the jury:

> "The jury is to disregard the motivation of the defense attorney and what he's trying to do, et cetera. You may proceed but refrain from that line of implying motives to counsel."

Defendant relies on cases that are inapplicable. In *People v. Palmer* (1970), 47 Ill. 2d 289, 298, the court found that comments similar to this case were not sufficiently prejudicial to warrant reversal.

In *People v. Smith* (1966), 74 Ill. App. 2d 458, 464, the State improperly commented on defendant's failure to call certain witnesses who had knowledge of the facts of the occurrence.

The conviction in *People v. Emerson* (1983), 97 Ill. 2d 487, 497-98, was reversed due to the cumulative effect of the State's improper closing argument, including that the defense counsel had laid down a smokescreen composed of lies, misrepresentations, and innuendoes, all defense attorneys try to dirty up the victim to distract the jury's attention from the defendant's crime, and the defense attorneys want to walk the defendants out of court and put them back on the street. The court held that the remarks improperly shifted the focus of attention from the evidence to the motives and objectives of trial counsel. *Emerson*, 97 Ill. 2d at 497-98.

Although the court in *People v. Wilson* (1983), 120 Ill. App. 3d 950, 962, stated that a smokescreen argument is improper, the reversal was based on the cumulative effect of all the errors in the State's closing argument, particularly that the State suggested that an insanity defense was not proper in a rape case.

The State responds that the prosecutor's rebuttal argument was properly made in response to defendant's closing argument. The State lists several defense comments that it considers attempts to confuse the jury and draw its attention away from the main evidence. The defense counsel argued that defendant could not have committed the burglary since (1) his statement to the police concerning where the property was located and apologizing to the victim was not a confession; (2) he never had a chance to give a full written statement; (3) the police never stated in their reports that they went to his residence; (4) all the property was recovered from his car and nowhere else; and (5) he never gave information to the police about the victim's missing microphone or jewelry.

The State relies on *People v. Webster* (1988), 175 Ill. App. 3d 119, 133, and *People v. Suane* (1987), 164 Ill. App. 3d 997, 1004, where the prosecutors' smokescreen comments were proper because they were invited by the defendant's closing argument. In *Webster*, an aggravated criminal sexual assault case, the defense counsel argued that the victim received her injuries prior to the defendant picking her up. (*Webster*, 175 Ill. App. 3d at 133.) In *Suane*, the defense counsel attacked the credibility of a State witness and argued that only one of the three eyewitness police officers testified because the State did not want the officers subjected to cross-examination, thus revealing that they were lying. *Suane*, 164 Ill. App. 3d at 1003.

The State also argues that any possible improper comments were cured when the trial court sustained defense counsel's objections to the smokescreen line of argument and harshly admonished the prosecutor. In addition, the State asserts that any improper comments

were not reversible error because they were not so prejudicial that they required a new trial. See *Suane*, 164 Ill. App. 3d at 1005; *People v. Davis* (1986), 142 Ill. App. 3d 630, 640; *People v. Hunter* (1984), 124 Ill. App. 3d 516, 548; and *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 1146.

While it is improper for a prosecutor to comment that defense counsel was attempting to raise a smokescreen (*Palmer*, 47 Ill. 2d at 300), the improper remarks did not merit reversal since they did not result in substantial prejudice to the defendant, considering the context of the language used, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial. (*People v. Smith* (1990), 141 Ill. 2d 40, 60.) While remarks such as "smokescreen" were better left unsaid, they were not of sufficient magnitude to justify a reversal. (*Suane*, 164 Ill. App. 3d at 1004-05.) Since the defense counsel invited and provoked the State's comments (*People v. Barney* (1982), 111 Ill. App. 3d 669, 677) and the trial court cured any improper comments when it sustained the defense counsel's objection and instructed the jury to disregard the comment (*People v. Franklin* (1990), 135 Ill. 2d 78, 100), the prosecutor's smokescreen comments were not reversible error.

■■ Finally, defendant asserts that the prosecutor improperly commented on defendant's failure to testify at trial, thus focusing the jury's attention on the defendant's failure to take the witness stand.

The prosecutor stated:

"He knows where these things are and he tells the police where these items are. And there's no other explanation that you have heard as evidence that you can consider as to why these items are here today. And that is because he took them. He had recent possession of them. He knew exactly where the chess set was.

* * *

There is no other explanation, ladies and gentlemen, for why the police have these things. They didn't just materialize from thin air. And they didn't as counsel seems to suggest all arise in the trunk."

Even though defendant did not object to those comments or raise this issue in his post-trial motion, he urges this court to consider the prejudicial comments under the plain error rule. We decline to do so. Defendant waived this issue because he did not object at trial or raise it in his post-trial motion. Failure to object to closing remarks at trial (*Franklin*, 135 Ill. 2d at 100; *People v. Hooper* (1989), 133 Ill. 2d 469,

492) and not including the issue in the post-trial motion generally constitutes waiver of the issue. *Enoch*, 122 Ill. 2d at 188.

Furthermore, we will not consider the issue under the plain error rule since defendant's argument is meritless. Defendant relies on *People v. Wollenberg* (1967), 37 Ill. 2d 480, 487, which is distinguishable. The prosecutor in *Wollenberg* reminded the jury that the defendant was the only person on trial, listed the eight witnesses who had testified at the trial, and commented, "No one else testified. Let's get that straight." (*Wollenberg*, 37 Ill. 2d at 487.) The court ruled that the express reference to the defendant's failure to testify constituted prejudicial error requiring a new trial. *Wollenberg*, 37 Ill. 2d at 487-88.

As long as the prosecutor intends to demonstrate the absence of any evidentiary basis for defense counsel's argument and not call attention to the fact that defendant did not testify, he may comment on the uncontradicted nature of the State's case. *People v. Dixon* (1982), 91 Ill. 2d 346, 350.

In this case, defendant's right to remain silent was not violated since the State's comments did not draw attention to the fact that defendant chose not to testify. Instead, the comments were made in response to the defense counsel's closing argument attacking the police officers' credibility and denying that any of the stolen property was found at defendant's residence, thus suggesting that someone put the property into defendant's car. In addition, the jury received a cautionary instruction regarding defendant's decision not to testify. Therefore, the State's comments were not reversible error.

Moreover, any possible error was harmless beyond a reasonable doubt. The evidence of defendant's guilt was overwhelming. Considering the totality of the evidence, we conclude that a trial without this error would produce no different result. *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.

Based on the foregoing, defendant's conviction is affirmed.

Affirmed.

GREIMAN, P.J., and TULLY, J., concur.