THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RAYMOND GREENLEAF, Defendant-Appellant.
First District (2nd Division)   No. 1—90—0214

Opinion filed September 21, 1993.

McCORMICK, P.J., dissenting.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, Eileen M. O'Neill, and Kurt J. Smitko, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a bench trial, defendant Raymond Greenleaf was found guilty of possession with intent to deliver more than 1 but less than 15 grams of a substance containing the controlled substance cocaine. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2).) He was sentenced to eight years' imprisonment. On appeal, defendant contends that his fourth amendment rights were violated, that the evidence did not establish his guilt beyond a reasonable doubt, and that the circuit court erroneously sentenced him as a Class X felon.

For purposes of our review, we combine the evidence elicited at the hearing on the pretrial motion to suppress evidence and at the trial. Officer Victor Guerrieri of the Chicago police department testified that on December 29, 1987, he went to a basement apartment

at 7731 South Aberdeen in Chicago. At that time he had no search or arrest warrant. Guerrieri testified that he and several other police officers had participated in an undercover operation and that he was conducting surveillance for police officer Jerry L. Hutch, who purchased drugs at that apartment. He had observed Hutch exit his vehicle and approach the rear basement door. A short time later, Hutch reappeared, joined him and several other police officers, and told them that he had purchased a package containing white powder for $25 from someone in the apartment. Five minutes later, the officers returned to the basement apartment together and knocked on the door. After a man responded on the other side of the door, they identified themselves as police officers. They then heard a loud commotion inside. When the officers forcibly entered the apartment, Guerrieri observed defendant trying to stuff something "down the front of his pants." He conducted a search of defendant's person and recovered a "clear plastic bag which contained three white paper packets," all of which contained a white powder, later determined to be 4.36 grams of a substance containing cocaine.

Officer Jerry L. Hutch testified that on December 29, 1987, at about 4:15 p.m. he went to the basement apartment because he had received information that drugs were being sold there. He knocked on the basement door and a voice from within asked who was there and what he wanted. After Hutch said that he wanted to "buy a bag," the door was opened and Hutch told codefendant Osba Patton, who was at the door, that he "wanted a quarter bag." After Patton asked to see his money and Hutch showed it to him, Patton closed the door, leaving Hutch standing outside the apartment. Patton subsequently returned with a package which was later determined to contain .17 of a gram of a substance containing cocaine. Hutch gave Patton $25 in prerecorded bills in exchange for the package. He then returned to his vehicle and drove to a prearranged location where he told the other police officers what had occurred. He showed the other police officers the paper packet that contained "a white powder substance" which he believed to be cocaine. All the officers then returned to the basement and after identifying themselves as police officers, knocked down the door. Hutch then apprehended codefendant Patton, searched him and recovered two small packages from his person, which were later determined to contain .01 of a gram of a substance containing cocaine and .02 of a gram of a substance containing heroin. Defendant was also ap-

prehended in the apartment. The prerecorded funds from the original undercover buy were never recovered.[1]

Geary Kull, an attorney, testified for defendant and codefendant at trial that he had spoken to Hutch prior to the hearing on the motion, and that Hutch told him that he "never went back into the apartment and didn't recover the material." Both Hutch and Guerrieri had denied, during their testimony, that that conversation had occurred. According to Kull, defendant's mother had decided that she would not retain Kull as counsel so he ceased pursuing any aspect of the case; however, he did inform an assistant State's Attorney of his conversation with Hutch.

When the hearing on the motion was concluded, the circuit court denied defendant's motion to suppress the evidence. After trial, the court found defendant guilty of possession of a controlled substance with intent to deliver and denied defendant's motion for a new trial. At the sentencing hearing, the presentence report established defendant's prior convictions in 1980 and 1983 for burglary. Because his current conviction was for a Class 1 felony, the State asked that the defendant be sentenced as a Class X offender pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).) The circuit court then sentenced defendant as a Class X felon to eight years in the custody of the Department of Corrections.

■■ On appeal, defendant first contends that his fourth amendment rights were violated by the police, who forcibly entered codefendant's apartment without obtaining a warrant. We note initially that defendant has not presented any evidence of his standing to assert a fourth amendment violation either in the circuit court or on appeal. In his brief, defendant maintains that he was in the apartment with the permission of his codefendant, but the record contains no evidence that would support defendant's standing to contest the police entry into the apartment. Moreover, when exigent circumstances ex-

---

[1]Despite the dissent's protestations to the contrary (254 Ill. App. 3d at 591), the circuit court could properly rely on the evidence concerning the prior police activity and presence at the scene as relevant, circumstantial evidence of defendant's guilt. Circumstantial evidence is proof of certain facts from which a fact finder may infer other connected facts which reasonably follow (*People v. Rhodes* (1981), 85 Ill. 2d 241, 248-49, 422 N.E.2d 605), and such evidence may support a conviction of possession with intent to deliver (*People v. Pintos* (1989), 133 Ill. 2d 286, 291-93, 549 N.E.2d 344). Thus, it would have been reasonable for the circuit court to consider, with the other evidence in the case, the officers' testimony concerning the prior transaction in determining whether defendant possessed the cocaine with intent to deliver.

ist, police may make a warrantless home arrest without violating the fourth amendment. (*Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.) Each case must be decided on the facts based on the information known to the officers at the time they acted. *People v. White* (1987), 117 Ill. 2d 194, 216, 512 N.E.2d 677, *cert. denied* (1988), 485 U.S. 1006, 99 L. Ed. 2d 698, 108 S. Ct. 1469.

In the case at bar, there was sufficient evidence that the police officers were required to act quickly in order to preserve the evidence of their prerecorded funds. (See *People v. Eichelberger* (1982), 91 Ill. 2d 359, 369, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383; see discussion in 2 W. LaFave, Search & Seizure §6.1(f), at 601-07 (2d ed. 1987).) We therefore conclude that the police officers were justified in making their warrantless entry to arrest Patton because of exigent circumstances. Furthermore, defendant has not contested the propriety of the police conduct once they were within the apartment. We conclude that the circuit court's denial of defendant's motion to quash the arrest and suppress evidence was not manifestly erroneous.

Defendant next contends that the State failed to prove beyond a reasonable doubt that he had the intent to deliver the controlled substance he possessed. Specifically, defendant contends that the circumstances indicated that he was a customer rather than a seller, and that there was no drug paraphernalia or other indicia of intent to deliver offered as evidence at trial. The State responds that the circuit court's conclusion that the evidence demonstrated an intent to deliver was not unwarranted because the "only reasonable inference" from the facts in this case is that defendant was assisting Patton in the distribution process.

A reviewing court will not set aside a conviction on the ground of insufficient evidence, unless "the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and thus creates a reasonable doubt of guilt." (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 333, 576 N.E.2d 1030.) A circuit court's determination will be reversed on appeal only if the reviewing court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.) The reviewing court cannot, however, "second-guess the trier of fact's evaluation of the credibility of the witnesses, the weight to be given

their testimony, and the inferences to be drawn from the evidence." (*People v. Murray* (1990), 194 Ill. App. 3d 653, 656-67, 551 N.E.2d 283; see also *People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) After carefully examining the facts of this case, we conclude that the circuit court's findings were neither unreasonable, improbable, nor unsatisfactory.

Intent to deliver a controlled substance is seldom amenable to direct proof and must generally be inferred circumstantially on a case-by-case basis. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 266, 354 N.E.2d 46.) A reasonable inference of intent to deliver arises from the defendant's possession of a quantity of contraband in excess of the amount designed for personal use. (See *People v. Birge* (1985), 137 Ill. App. 3d 781, 791, 485 N.E.2d 37 (State sufficiently established intent to deliver when defendant possessed 51 pounds of cannabis); *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702-03, 479 N.E.2d 428 (intent established where defendant had in his residence a bottle containing acetone, a bag containing rolling papers and 578.8 grams of cannabis).) This inference may be supported by other factors, including the manner in which drugs are kept. *People v. Berry* (1990), 198 Ill. App. 3d 24, 28-29, 555 N.E.2d 434; *People v. Friend* (1988), 177 Ill. App. 3d 1002, 1021, 533 N.E.2d 409, *appeal denied* (1989), 126 Ill. 2d 563, 541 N.E.2d 1110.

■ In this case, several facts support the inference that defendant intended to deliver the cocaine. Most importantly, the evidence shows that defendant possessed 4.36 grams of cocaine when he was arrested, approximately 25 times the amount of cocaine sold to the undercover police officer, while Patton possessed only .03 of a gram of substances containing controlled substances. Thus, defendant possessed enough cocaine to repeat the transaction many times over, while Patton was unable to repeat it even once without defendant's contribution. Though we recognize that this fact alone may not be enough to rebut the presumption that defendant was a mere purchaser, when considered with the rest of the evidence, it becomes clear that the only permissible inference was that defendant possessed the cocaine with the intent to deliver. First, mere purchasers were not allowed to enter the apartment, as evidenced by the fact that Hutch was required to wait outside until Patton returned with the cocaine. Also, when Patton left Hutch waiting at the door, he obtained the requested cocaine from somewhere or someone in the apartment; the absence of cocaine elsewhere in the apartment is consistent with the theory that defendant was assisting his codefendant. Finally, the considerable sum of money required to purchase 4.36 grams of co-

caine was found neither on Patton nor elsewhere in the apartment. Thus, the court's determination that the intent-to-deliver element was proved beyond a reasonable doubt was not unreasonable, improbable, or unsatisfactory. Indeed, the determination is justified by the evidence.

■ Defendant finally contends that the circuit court erred in sentencing him as a Class X offender because the State proved neither that his prior convictions were for offenses committed after the effective date of the statute, nor that the second offense occurred after the first. However, in light of the recent supreme court decision of *People v. Williams* (1992), 149 Ill. 2d 467, 484, 487-88, 599 N.E.2d 913 (holding that the Unified Code of Corrections places no duty upon the State to prove defendant's prior felony convictions beyond a reasonable doubt and that it does not require any more formal proof of defendant's prior criminal record than is evidenced by the presentence investigation report), we find no error in the circuit court's imposition of a Class X sentence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, J., concurs.

PRESIDING JUSTICE McCORMICK, dissenting:
Respectfully, I dissent from the majority's opinion to the extent that it holds that the intent to deliver was proven beyond a reasonable doubt. Neither human experience nor logic permits an inference of intent to deliver under the facts and circumstances of this case. The evidence showing how and why the police were present at the scene is offered not to prove the truth of the matter asserted and is not substantive evidence against defendant. Casting away this preliminary evidence involving the conduct of Patton, defendant's culpability commences when he is confronted by the police inside the apartment.

As stated by the majority, a reasonable inference of intent to deliver narcotics arises from possession of a quantity of contraband in excess of the amount designed for personal use. There is nothing in the record to suggest that 4.36 grams of cocaine is in excess of an amount designed for personal use. Quantitatively, this amount is far below the 51 pounds and the 578.8 grams of cannabis that triggered an inference of intent to deliver in the *Birge* and *Shaefer* cases. Unlike cases finding an inference of intent to deliver, in the case at bar,

there was no drug paraphernalia, large sums of cash or a weapon associated with defendant.

The majority bolsters its theory of an inference of intent to deliver by focusing on the fact that defendant possessed more cocaine than Patton possessed or sold to Hutch. This theory is troubled by the fact that the marked money given to Patton was never found. Perhaps we could speculate that the unfound marked money was stashed with an unfound cache of drugs. Perhaps we could speculate that the drug dealer Patton had nearly sold all of his inventory. We cannot speculate as to how defendant assisted Patton.

The isolated transaction between Hutch and Patton causes the majority to make a pronouncement that drug-purchasing customers were not permitted inside Patton's apartment. The majority's logic reasons that since defendant was inside Patton's apartment, he was not a customer. Nothing in the record supports this pronouncement. Our focus is limited to the inquiry: How did defendant assist Patton in the specific drug transaction with Hutch?

The majority states that Patton obtained the drugs from somewhere or someone as he left Hutch standing at the door. No one could disagree. But how did defendant assist Patton? Did Patton obtain the drugs from his own person, defendant or a hidden cache? There is no evidence that defendant assisted Patton. There is no evidence that defendant was in the apartment when Hutch purchased the drugs from Patton. There is no evidence of defendant having an interest in the apartment. There is no explanation as to the failure of the police to find the prerecorded funds. There is no evidence to negate the probability of additional drugs stashed in the same place as the prerecorded funds.

I conclude that the State failed to establish beyond a reasonable doubt that defendant had the requisite intent to deliver an illegal substance. (See *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 257 (test is whether reviewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).) However, defendant was clearly found to be in unlawful possession of 4.36 grams of cocaine.

I would reduce the conviction of the offense of possession of a controlled substance with intent to deliver to conviction of the offense of possession of a controlled substance. (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b).) The trial court should conduct a sentencing hearing and impose a sentence consistent with this decision.