# Illinois Official Reports

## Appellate Court

---

### *People v. Evans*, 2017 IL App (1st) 150091

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEYWANI EVANS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-0091 |
| Filed | June 27, 2017 |
| Rehearing denied | July 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-20680; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Brian A. Levitsky, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a bench trial, defendant Keywani Evans was convicted of one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) and sentenced to four years' imprisonment. Evans appeals his conviction, arguing that he was denied a fair trial when the trial court asked the State to present more evidence after it had rested both its case-in-chief and its rebuttal case. In affirming the judgment of the trial court, we hold that the trial court did not abandon its role as neutral arbiter and assume the role of prosecutor by requesting to see evidence that the State did not produce in its case-in-chief.

¶ 2                                    BACKGROUND

¶ 3    Evans was charged with two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) and two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6 (a)(1), (a)(2) (West Supp. 2013)). Evans waived a jury trial.

¶ 4    Officer Ron Bialata testified that, on September 10, 2013, he and his partner, Officer Dennis O'Brien, were patrolling the area of 82nd Street and South Coles Avenue in response to a homicide that occurred the day before. (The record reflects different spellings of "Bialata.") While driving through the area, Bialata saw a man, whom he identified as Evans, walking in the street while looking at his cell phone. The man was wearing a "white track jacket." Bialata drove past Evans but reversed so he and his partner could approach Evans. When O'Brien got out, Evans fled through a vacant lot. Bialata was able to see Evans for "a few seconds" before he ran off. O'Brien went after Evans on foot. Bialata initially tried to track Evans in the police cruiser but eventually left the cruiser and continued on foot. During the chase, Evans jumped over a fence and dropped his cell phone. He then scaled a second fence, at the top of which his white jacket got stuck. Evans jumped down to the other side, leaving his jacket snagged on the fence.

¶ 5    The officers were not able to catch Evans. But they recovered the jacket from the fence. When handling the jacket, Bialata felt a hard object in the right pocket. There he recovered a .32-caliber handgun, containing four live rounds of ammunition. From the left pocket, Bialata recovered a wallet. In the wallet was a state identification card bearing Evans's name and picture, a Link card, and $24. The officers issued an investigative alert for Evans. On September 16, 2013, Bialata learned that Evans had been arrested and identified him as the person he saw jump the fence. On cross-examination, Bialata testified that he was able to view Evans for a few seconds before he ran from the officers.

¶ 6    Officer Christopher Maraffino testified that on October 16, 2013, he was assigned to respond to the area of 7555 South Langley Avenue to follow up on an active investigative alert for Evans. Maraffino and his partner conducted surveillance of the address and eventually saw Evans walking on the east side of South Langley Avenue. When the officers approached Evans and announced themselves, he ran into the building. Officers apprehended Evans and transported him to a police station.

¶ 7    The State entered into evidence a certified copy of Evans's 2009 felony conviction for robbery and a self-authenticating document indicating that Evans did not have a Firearm Owner's Identification (FOID) card. The State then closed its case-in-chief.

¶ 8    Evans moved for a directed finding, arguing that the identification of Evans was not reliable, as the officer viewed the individual only for a few seconds and the identification was not corroborated by physical evidence. The trial court denied the motion.

¶ 9    Evans testified that on the night of September 10, 2013, he was elsewhere than around South Coles Avenue. And on cross-examination, he stated that the white jacket, wallet, and his state identification card were not left at that location by him and the gun was not his.

¶ 10    After Evans rested his case, this exchange took place:

"THE COURT: Rebuttal?

[Assistant State's Attorney]: State rest[s] in rebuttal.

THE COURT: I think I would like to see the wallet. Do you have it?

[Assistant State's Attorney]: I do not, Judge. I'd have to have the officer bring it in from ERPS.

THE COURT: Is that something we can do today or something we would have to wait another day [*sic*]?

[Assistant State's Attorney]: Let me check. He can go get it right now if you want.

THE COURT: Do you want [to] wait an hour today or tomorrow or another date?

[Defense attorney]: That's the only thing you want to look at.

[Assistant State's Attorney]: He's [g]oing to bring the jacket too.

THE COURT: Well, I'd like to see the wallet. We [c]an get an hour or come back another date.

[Defense attorney]: My experience over the years is that an hour is a lot longer than that.

THE COURT: Tell me what you want to do.

[Defense attorney]: We can *** do it tomorrow.

THE COURT: 11:00 o'clock tomorrow. See you then."

¶ 11    The following day, the trial court went on the record, saying "[w]e're here in the midst of a trial and an issue came up about some evidence that was recovered and the State now has that evidence. Are you going to call a witness?"

¶ 12    The State recalled Officer Bialata, who again identified Evans as the man that he saw and pursued. He also identified a white track jacket as the jacket that Evans had been wearing before it got stuck on the fence that he was climbing. Further, Bialata identified a wallet as the wallet that he found in the pocket of the white track jacket and the items in the wallet—Evans's state identification card, a Link card and bus card, and $24.

¶ 13    Evans moved to strike the officer's rebuttal testimony, stating that "there wasn't any testimony from [Evans] concerning the element that he wasn't there." The trial court denied the motion on the basis that the officer's testimony "goes to [Evans's] presence" because the officer originally stated he found a wallet with an identification card in the jacket with the weapon. The trial court went on to say, "[n]ow the ID is something relevant. I want to see it. I thought it was important. I'm not striking the testimony."

¶ 14    Evans, in sur-rebuttal, testified that the wallet and state identification card belonged to him but that he had lost this wallet before September 10, 2013. For this reason, he had applied for a new state identification card and received one before September 10. Evans explained on cross-examination that his new identification was taken by officers when he was arrested and

that he lost his wallet while he was moving furniture into and out of his apartment. He also stated that the bus fare card did not belong to him.

¶ 15    After closing arguments, the trial court found Evans "guilty as charged." The trial court noted that Evans was identified as the person running from the officers and that the jacket recovered after the chase contained a gun and "identification pieces that [Evans] acknowledges are his." The trial court also stated that it did not find Evans's testimony that he had lost his wallet to be credible but found the officers' testimony both credible and "compelling beyond a reasonable doubt."

¶ 16    Evans filed a motion for a new trial, arguing that "the Court allowed over [d]efendant's objection the State to put into the trial evidence that was highly prejudicial rebuttal unrelated to [Evans's] testimony in [his] case in chief." The trial court denied Evans's motion for a new trial and later sentenced Evans to four years' imprisonment. (The *mittimus* reflects that the sentence was imposed on count I for unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)). The information charged two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) and two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6 (a)(1), (a)(2) (West Supp. 2013)). On this record, it is unclear when or if the remaining three charges were dropped by the State or merged by the trial court.)

¶ 17                                                    ANALYSIS

¶ 18    Evans appeals, arguing that he did not receive a fair trial because the trial court departed from the role of a neutral magistrate and took on the role of a prosecutor when it requested the State to present corroborating evidence (the wallet) after the State had closed both its case-in-chief and rebuttal case.

¶ 19    As an initial matter, the State argues that Evans has forfeited the issue by failing to make a timely objection at trial and by failing to make the same arguments in his motion for a new trial as he makes on appeal. Generally, an issue is forfeited if the defendant does not raise it in a trial objection and a written posttrial motion. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 49. We note that Evans did not object when the trial court granted a continuance so the State could bring in the wallet, nor object before or during Officer Bialata's testimony in rebuttal. After Officer Bialata finished testifying, Evans moved to strike the testimony as improper rebuttal evidence. See *Spurgeon v. Mruz*, 358 Ill. App. 3d 358, 360 (2005) ("Timeliness requires that objections to evidence be made at the time the evidence is offered or as soon as grounds for the objection become apparent."). In his motion for a new trial, Evans argues that "the Court allowed over [d]efendant's objection the State to put into the trial evidence that was highly prejudicial rebuttal unrelated to [Evans's] testimony in [his] case in chief." On appeal, he argues that the trial court assumed the role of a prosecutor by requesting production of the wallet by the State.

¶ 20    Evans argues that the issue is not forfeited. First, citing *People v. Heider*, 231 Ill. 2d 1, 18 (2008), Evans argues that a reviewing court can review "the same essential claim" on appeal if the issue is not "completely different" than the one raised at trial. In *Heider*, our supreme court held, "where the trial court clearly had an opportunity to review the same essential claim that was later raised on appeal, this court has held that there was no forfeiture." *Id.*

¶ 21    Evans next cites *People v. White*, 249 Ill. App. 3d 57, 60 (1993), for the proposition that the forfeiture rule should be relaxed where the issue on appeal involves the trial court's own

conduct. This concept is known as the *Sprinkle* doctrine, as it arises from *People v. Sprinkle*, 27 Ill. 2d 398, 401 (1963), in which our supreme court held that less rigid application of the forfeiture rule "should prevail where the basis for the objection is the conduct of the trial judge." In the context of a bench trial, this less rigid forfeiture rule should be applied "when counsel has been effectively prevented from objecting because it would have ' "fallen on deaf ears." ' " *People v. Thompson*, 238 Ill. 2d 598, 612 (2010) (quoting *People v. Hanson*, 238 Ill. 2d 74, 118 (2010), quoting *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)). But our supreme court has also called for applying this exception only in "extraordinary circumstances, such as when a trial judge makes inappropriate remarks to a jury [citation] or relies on social commentary, rather than evidence, in sentencing a defendant to death [citation]." *McLaurin*, 235 Ill. 2d at 488. And "[t]hat we have seldom applied *Sprinkle* to noncapital cases further underscores the importance of uniform application of the forfeiture rule except in the most compelling of situations." *Id.*

¶ 22     In any event, forfeited issues can be considered under the plain error doctrine. The plain error doctrine allows us to consider unpreserved error when a clear or obvious error occurred and (i) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (ii) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Nowells*, 2013 IL App (1st) 113209, ¶ 18. Under either prong of the plain error doctrine, the burden of persuasion remains the defendant's. *People v. Lewis*, 2014 IL App (1st) 122126, ¶ 27. A reviewing court conducting plain error analysis must first determine whether an error occurred. *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010) ("Without reversible error, there can be no plain error.").

¶ 23     Whether or not we conclude that Evans forfeited the issue, the result would be the same, as we find no error.

¶ 24     Generally, a trial judge may aid in bringing out the truth in a fair and impartial manner. *People v. Kuntz*, 239 Ill. App. 3d 587, 591 (1993). Illinois courts have recognized that the proper function of a judge includes a duty to ensure that justice is done in criminal trials when, for instance, " ' "a certain fact has not been developed or a certain line of inquiry has not been pursued," ' " as long as the judge does not in any way become an advocate for one side or the other. *People v. Taylor*, 357 Ill. App. 3d 642, 648 (2005) (quoting *People v. Rega*, 271 Ill. App. 3d 17, 23 (1995), quoting *People v. Lurie*, 276 Ill. 630, 641 (1917)).

¶ 25     To this end, a trial court may, *sua sponte*, call its own witnesses and question witnesses called by either party. Ill. R. Evid. 614(a), (b) (eff. Jan. 1, 2011). What a trial court may not do is assume the role of an advocate. *People v. Smith*, 299 Ill. App. 3d 1056, 1064 (1998). But, a suggestion that the State present evidence proving essential elements of an offense is not an assumption of the role of a prosecutor. *People v. Robinson*, 236 Ill. App. 3d 313, 317 (1992). A trial court has discretion to permit the State to reopen its case to present additional proof and may reopen a case on its own motion where a sound basis for it appears in the record. *Kuntz*, 239 Ill. App. 3d at 591-92. The propriety of the judicial examination depends on the circumstances of each case and rests largely in the trial court's discretion. *Robinson*, 236 Ill. App. 3d at 317.

¶ 26     We conclude that the trial court did not abandon its role as neutral arbiter and assume the role of a prosecutor. The trial court stated that it wanted to see the wallet and granted the State a continuance to admit the wallet into evidence. This was not an extraordinary course of action,

and it was done in a fair and impartial manner. And, as this was a bench trial, the court possessed wide latitude, the question related to its fact-finding role, and the risk of prejudice to Evans was low. See *Obernauf v. Haberstich*, 145 Ill. App. 3d 768, 771-72 (1986).

¶ 27 Contrary to Evans's argument, *Kuntz* is not "nearly identical." In *Kuntz*, the appellate court found reversible error where the trial court *sua sponte* granted a continuance for the State to reopen its case. *Kuntz*, 239 Ill. App. 3d at 588. The defendant presented evidence in a hearing to rescind a summary suspension of his driver's license that was sufficient to survive the State's motion for a directed finding. *Id.* at 589. The State then presented an officer who testified that he pulled over the defendant after he saw his car twice cross the centerline. *Id.* On pulling the defendant over, the officer noticed that he smelled strongly of alcohol. *Id.* The officer took defendant to the station and administered a Breathalyzer test. *Id.* Crucially, however, the State rested without the officer testifying that he calibrated the machine before he tested the defendant, a necessary step for the State to lay a proper foundation of the test results. *Id.* at 589-90.

¶ 28 During his closing and rebuttal arguments, defendant argued that there was no evidence that the Breathalyzer machine had been calibrated or was properly working before the officer administered the test. *Id.* at 590. The trial court interrupted defendant's rebuttal argument and *sua sponte* asked the State whether it wanted a continuance to present additional evidence. *Id.* A continuance was granted, and the next day the State presented evidence that the machine had been calibrated two weeks before defendant's arrest and the machine had been "purged" with an air sample before defendant was tested. *Id.* With this evidence, the trial court denied the defendant's motion to rescind the statutory summary suspension. *Id.*

¶ 29 The defendant appealed, arguing that it was an abuse of discretion for the trial court to *sua sponte* grant the State a continuance to reopen its case. *Id.* In reversing the trial court's denial of the defendant's motion to rescind summary suspension, the appellate court held, "[u]nder the circumstances," the trial court "impermissibly acted as an advocate when he prompted the State to seek a continuance and present additional evidence the following day." *Id.* at 592. The appellate court noted that "but for the court's intervention, the State would have failed to rebut the defendant's *prima facie* case and the petition to rescind the summary suspension would had to have been granted." *Id.*

¶ 30 We find *Kuntz* distinguishable. Unlike in *Kuntz*, the trial court here did not decide after hearing Evans's arguments that the State needed to present more evidence and then order the State to produce it. Rather, the trial court asked to see evidence before argument and, crucially, the wallet was not necessary to prove the State's case. Although the identification in the wallet bolstered Officer Bialata's testimony that the loaded gun was found in the jacket with the wallet belonging to Evans, his testimony alone was sufficient to establish that the items were found together. This evidence, coupled with Officer Bialata's identification of Evans as the man who left the jacket behind, sufficed to support a finding that Evans, a convicted felon, possessed the gun and ammunition without a FOID card. The production of the wallet was not necessary to that determination. Unlike in *Kuntz*, the State would have made its case without the court's intervention.

¶ 31 We find that the trial court did not abuse its discretion in requesting to see evidence that the State did not produce in its case-in-chief or abandon its role as neutral arbiter and assume the role of a prosecutor by requesting that the State produce the wallet.

¶ 32        Affirmed.