2021 IL App (3d) 190048

Opinion filed April 9, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0048 Circuit No. 16-CF-762 |
| | ) | |
| EZYEKEIO M. SIDNEY, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Wright concurred in the judgment and opinion.
_____

**OPINION**

¶ 1      Defendant, Ezyekeio M. Sidney, appeals the Peoria County circuit court's denial of his motion to withdraw his guilty plea. Defendant argues that the matter should be remanded for new postplea proceedings because the court impermissibly assumed the role of an advocate for the State by *sua sponte* calling a witness who offered testimony favorable to the State during the hearing on defendant's motion to withdraw his guilty plea. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3        Defendant was charged with three counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), three counts of aggravated battery (*id.* § 12-3.05(e)(1)), and one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). The three counts of attempted first degree murder and three counts of aggravated battery concerned three separate victims. Defendant was represented by Assistant Public Defender Chandra Justice.

¶ 4        Defendant pled guilty to two counts of aggravated battery in exchange for the State's agreement to dismiss the additional charges. The State also agreed that defendant's sentences would run concurrently. The parties agreed that the State could use the third count of aggravated battery, which involved a third victim, in aggravation at the sentencing hearing. When Justice recited the terms of the plea for the court, she noted that defendant would be required to serve 85% of his sentences. The court asked defendant if this was his understanding of the terms of the plea agreement. Defendant replied, "Yes, it is, [Y]our Honor."

¶ 5        Defendant stated that he had a high school diploma. The court asked him if he had read and understood the "two pages" that were presented to the court as well as the guilty plea form.[1] Defendant said he had.

¶ 6        As a factual basis for the plea, the State indicated that a witness had seen a black male wearing a pink shirt discharge a gun inside a bar. The bullets struck the two victims named in the counts of aggravated battery to which defendant pled guilty. Officers obtained security camera footage and were able to capture a still image of the shooter. They released the image to the media and on Facebook. An anonymous caller identified the shooter as defendant. Officers interviewed defendant, and defendant admitted that he had committed the shooting. Defendant

---

[1]The court was presumably referring to a two-page order that appears in the record along with the guilty plea form and contains the terms of the plea agreement.

said that he was aiming for another individual, Robert Ross, and that he did not intend to shoot the victims. At the time defendant fired his gun, he thought that Ross was "going for a gun." Defendant said that he was sorry for shooting the victims. Justice stated that the factual basis provided by the State was consistent with the discovery she had received. She said that she and defendant had considered pursuing the affirmative defenses of self-defense or defense of others, but they ultimately decided to "go this route." Defendant said that was correct. Defendant said that no one was forcing him to plead guilty and that it was still his desire to plead guilty. The court accepted the plea.

¶ 7       Following a sentencing hearing, the court imposed concurrent sentences of 22 years' imprisonment on each count of aggravated battery.

¶ 8       Defendant filed a "Motion: Ineffective Assist of Counsel" as a self-represented litigant. In the motion, defendant raised various claims of ineffective assistance of plea counsel. Defendant also filed a motion to withdraw his guilty plea as a self-represented litigant in which he repeated the same claims of ineffective assistance of counsel.

¶ 9       At the hearing on defendant's "Motion: Ineffective Assist of Counsel," defendant filed supplemental claims of ineffective assistance of counsel as a self-represented litigant. The court discussed the claims in defendant's "Motion: Ineffective Assist of Counsel" and his supplemental claims with defendant and Justice.

¶ 10      One of the claims in defendant's motion was that Justice told him that the law was going to change prior to his sentencing hearing such that he would only have to serve 50% or 75% of his sentence rather than 85%. Justice stated that she told defendant that the law might change such that he would not be required to serve 85% of his sentence. She knew that if the law

3

changed, it would go into effect January 1, 2018, so she had the sentencing hearing continued to January 3, 2018. However, the law did not change.

¶ 11     Defendant also claimed that Justice told him that he would only have to plead to one count of aggravated battery if one of the victims did not come to the plea hearing, but she had him plead to both counts even though one of the victims did not come. Justice explained that the State offered to Justice to have defendant plead guilty to only two counts of aggravated battery because the third witness was not cooperative. Justice then told the State that if one of the other victims did not come, "we perhaps would plead to one since it was going to be a concurrent sentence anyway." On the day of the plea hearing, the State advised Justice that both witnesses were cooperative and would show up if the case went to trial. Justice said that even if one of the witnesses was not there on the day of the plea hearing, she could not make the State dismiss anything.

¶ 12     The court discussed several other claims of ineffective assistance of counsel with Justice and defendant. The court found that all defendant's claims lacked merit or pertained only to trial strategy. The court said that it would not appoint new counsel to advance defendant's claims. The court then turned its attention to defendant's motion to withdraw his guilty plea. Justice said that she did not feel comfortable representing defendant on this motion because it alleged that she was ineffective. The court appointed Assistant Public Defender Mark Rose to represent defendant on his motion to withdraw his guilty plea.

¶ 13     Rose filed a supplemental motion to withdraw guilty plea, which incorporated by reference the allegations in the postplea documents that defendant filed as a self-represented litigant and his statements at the hearing on the "Motion: Ineffective Assist of Counsel." The supplemental motion also alleged that defendant's pleas were the result of ineffective assistance

4

of counsel, defendant's pleas were the result of erroneous and misleading information, the court erred in denying defendant's claims of ineffective assistance of counsel, defendant's sentence was excessive, and the plea hearing was not conducted in compliance with Illinois Supreme Court Rule 402 (eff. July 1, 2012).

¶ 14 At the hearing on the motion to withdraw, the court noted that Justice had previously been allowed to withdraw. The court said that Justice had been in the courtroom a moment earlier. Rose said that he believed she was in the jury room. The court agreed. Rose said that he and the State had agreed that the court could consider the dialogue from the hearing on defendant's "Motion: Ineffective Assist of counsel" to expedite the proceedings.

¶ 15 Defendant testified that he could read at a second-grade level. Defendant said that he signed the documents that he needed to sign for the plea to go through, but he did not have time to read the documents. Justice told him to say "yes" to the court's questions at the plea hearing. Defendant said that Justice had told him that she would not allow him to plead guilty to two charges at the plea hearing unless both victims came to the hearing. Defendant later learned that only one victim came to the hearing, but Justice still had him plead guilty to both charges.

¶ 16 Defendant testified that Justice told him at the time of his plea and at the time of sentencing that the law would change such that he would be eligible for 50% good-time credit on his sentence. No one ever told defendant that the law had not changed. Defendant acknowledged that the court had advised him that he would be required to serve 85% of his sentence, but defendant assumed that would change.

¶ 17 Defendant testified that someone else wrote the motions he filed as a self-represented litigant, but he composed them. He was able to read legal documents with help.

¶ 18        After defendant's testimony, the court asked the defense and the State if they had more evidence to present. Both parties said they had no further evidence. The court noted that Justice was available, and it had spoken with her at length at the hearing on defendant's "Motion: Ineffective Assist of Counsel." The parties gave their arguments.

¶ 19        After hearing arguments, the court stated: "I don't mean to sound or pull rank here, but I can do anything I want including within reason today and that would include potentially calling Ms. Justice. I'm wondering why she wasn't called, but she's here." The court asked the bailiff to have Justice enter the courtroom. The court stated: "If she weren't here we could still move forward, but as long as she—and for there [*sic*] record she hasn't heard anything that's gone on in this hearing to this point." Justice entered the courtroom. The court asked Justice if she just happened to be in the courthouse that day, and she said that she was asked to be there. The court then stated: "Oh. Oh, okay. So we actually planned in advance for you to be here in the event your testimony was going to be needed; right?" Justice replied, "Correct."

¶ 20        The court then called Justice as a witness and questioned her. The court also gave each party an opportunity to cross-examine Justice.

¶ 21        The court noted that Justice had previously indicated that the sentencing hearing had been continued due to the possibility of the applicable percentage for good-time credit changing and that Justice had previously stated that the law did not actually change. The court asked Justice if she ever communicated to defendant that the law had not changed. Justice replied: "Yes. And if not prior to [the day of the sentencing hearing], I would have told him that day when we talk[ed] about the sentencing." The court asked, "So is there any doubt in your mind you told him that this was not a 50 percent sentence he was looking at, but rather remained an 85 percent?" Justice replied, "No doubt in my mind that we discussed it, and I believe we would have went through

6

the sentencing with the Court as we usually do before we sentenced, but I don't recall." Rose asked Justice if she recalled a specific conversation where she told defendant that the law had not changed. Justice said she did not recall a specific conversation, but she knew she spoke with him on the day of sentencing.

¶ 22     The court asked Justice whether anything in her dealings with defendant led her to believe that he had a second-grade reading level. Justice said that she did not believe that. Justice said that defendant was one of the most eloquent and articulate clients that she had ever had. She said that defendant reviewed discovery with her verbally and read it himself. He did not indicate that he had trouble reading the documents. Justice testified that she would have remembered if defendant had told her that he had trouble reading because she would have been surprised based on how articulate and eloquent he was. She also believed that he wrote correspondence to either her or the court that was lengthy and eloquent. Justice acknowledged that eloquence did not necessarily equate to reading ability, but she thought that defendant had drafted motions or correspondence. This led her to believe he could read. She did not remember whether these documents were in different handwritings.

¶ 23     The court asked Justice if she had been advised on the day of the plea hearing which witnesses were going to appear in the case. Justice testified that one of the three victims was uncooperative, so defendant pled guilty to only two counts of aggravated battery. She had discussed with defendant the possibility of trying to get the State to negotiate it down to one count of aggravated battery if one of the other victims did not show up for the plea hearing. Only one of the victims came to the plea hearing, but the State advised Justice that the other victim was cooperative and would be willing to testify if the matter went to trial. Both victims had submitted restitution requests, and Justice had no reason to doubt what the State told her.

7

¶ 24    The court asked the parties if they had anything further to add before it announced its ruling. They both said that they did not.

¶ 25    The court denied defendant's motion to withdraw his guilty plea. The court reasoned:

> "On all of the points mentioned by Defense counsel here today, I think the record either affirmatively rebuts it or it was confirmed even without Ms. Justice's testimony, but she pretty much sealed the deal, not that it had to be because I think the credibility of [defendant] is lacking somewhat.
>
> My findings are similar to Ms. Justice, and I've commented probably on the record before how well[-]spoken [defendant] is and respectful, and I'm not an expert, but I can only take his word when he told me he read and understood all the documents that were presented throughout the case and I would have had no reason to doubt that.
>
> So for those and other reasons mentioned today, I think the motion does need to be denied at long last, but we needed to take the time necessary to get to this point."

Defendant appealed.

¶ 26                                    II. ANALYSIS

¶ 27    Defendant argues that the cause should be remanded for new postplea proceedings because the circuit court impermissibly assumed the role of an advocate by *sua sponte* calling Justice as a witness at the hearing on his motion to withdraw his guilty plea after both parties had rested. Defendant contends that the testimony provided by Justice was overwhelmingly favorable to the State. We find that the court did not abuse its discretion in calling Justice as a witness.

¶ 28    "Generally, a trial judge may aid in bringing out the truth in a fair and impartial manner." *People v. Evans*, 2017 IL App (1st) 150091, ¶ 24. To that end, the court may, on its own motion or the suggestion of party, call witnesses. Ill. R. Evid. 614 (eff. Jan. 1, 2011). The court may interrogate witnesses that it calls, and all parties are entitled to cross-examine witnesses called by the court. *Id.* "It is well established that a trial judge has the right to question witnesses in order to elicit the truth or to clarify issues which seem obscure." *People v. Williams*, 173 Ill. 2d 48, 79 (1996). However, the court may not assume the role of an advocate. *Evans*, 2017 IL App (1st) 150091, ¶ 25; see also *People v. Jackson*, 409 Ill. App. 3d 631, 647 (2011) ("A trial court abuses its discretion when it adopts the role of advocate for one of the parties.").

¶ 29    Here, the circuit court did not abuse its discretion in calling Justice as a witness. The court's questions to Justice were neutral and were designed to aid in bringing out the truth regarding defendant's claims of ineffective assistance of counsel. Many of the court's questions were meant to clarify and expound upon Justice's statements at the earlier hearing on defendant's "Motion: Ineffective Assist of Counsel." For example, Justice stated at the earlier hearing that she had discussed with defendant the possibility of the law changing such that he would not be required to serve 85% of his sentence, but she did not indicate whether she communicated to defendant that the law had not changed. The court then asked Justice at the hearing on defendant's motion to withdraw guilty plea whether she communicated to defendant that the law had not changed. Similarly, the court's questions to Justice about whether she had concerns with defendant's reading ability were designed to determine the truth of defendant's allegations regarding his reading limitations. The mere fact that Justice's answers to the court's questions did not support defendant's claims did not render the court an advocate for the State.

¶ 30    Notably, the court's comments indicated that it would have denied the motion even without Justice's testimony. Before the court called Justice as a witness, it indicated that it could proceed to rule on the motion without her testimony, but it wanted to hear from Justice since she was there. After Justice testified, the court stated:

> "On all of the points mentioned by Defense counsel here today, I think the record either affirmatively rebuts it or it was confirmed even without Ms. Justice's testimony, but she pretty much sealed the deal, not that it had to be because I think the credibility of [defendant] is lacking somewhat."

These comments indicated that the court would have denied the motion based on its concerns about defendant's credibility even without Justice's testimony, but Justice's testimony made the court more confident in its decision.

¶ 31    We reject defendant's reliance on *People v. Kuntz*, 239 Ill. App. 3d 587 (1993), which involved a summary suspension hearing. After the circuit court in *Kuntz* had heard the evidence and the parties had presented their arguments, the court *sua sponte* asked the State if it wanted time to bring in log books to show that the Breathalyzer machine the defendant had used was working properly. *Id.* at 590. The court then granted the State a continuance. *Id.* Following the continuance, the State presented evidence that the machine was working properly, and the court denied the defendant's motion to rescind the summary suspension of his driver's license. *Id.*

¶ 32    On appeal, this court held that the circuit court abused its discretion in *sua sponte* granting the State a continuance to present additional evidence because it impermissibly acted as an advocate for the State. *Id.* at 592. The court noted that, in summary suspension proceedings, once the circuit court determines that the defendant has presented a *prima facie* case for recission, the burden shifts to the State to admit the Breathalyzer test result into evidence and to

10

lay a proper foundation for admission of the test, including evidence that the machine was working properly. *Id.* at 590. The *Kuntz* court reasoned: "It is clear that but for the court's intervention, the State would have failed to rebut the defendant's *prima facie* case and the petition to rescind the summary suspension would had to have been granted." *Id.* at 592.

¶ 33    Here, unlike in *Kuntz*, the court did not assist the State in presenting evidence necessary to meet its burden. In the instant case, the State had no burden of proof and was not required to present any evidence. Rather, it was defendant's burden to demonstrate the necessity of the withdrawal of his guilty plea. See *People v. Dougherty*, 394 Ill. App. 3d 134, 140 (2009). Also, the circuit court in *Kuntz* was clearly aiding the State when it prompted the State to introduce additional evidence. In this case, on the other hand, it was not clear before Justice testified that her testimony would necessarily be helpful to the State. The record does not indicate that the court knew in advance how Justice would answer its questions. Indeed, if Justice had testified that she did not advise defendant that the law regarding good-time credit did not change or that she had concerns about defendant's reading ability, her testimony would have been helpful to defendant rather than the State. We reassert that the court's purpose in calling Justice as a witness appeared to be to determine the truth of defendant's allegations rather than to advocate for either party.

¶ 34                                III. CONCLUSION

¶ 35    The judgment of the circuit court of Peoria County is affirmed.

¶ 36    Affirmed.

11

**No. 3-19-0048**

| | |
|---|---|
| **Cite as:** | *People v. Sidney*, 2021 IL App (3d) 190048 |

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 16-CF-762; the Hon. Paul Gilfillan, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Patricia Mysza, and Brian L. Josias, of State Appellate Defender's Office, of Chicago, for appellant. |

| | |
|---|---|
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |