NOTICE
Decision filed 01/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230405-U

NO. 5-23-0405

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 20-CF-114 |
| | ) | |
| DAKOTA PATTON, | ) | Honorable |
| | ) | Charles C. Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court erred by failing to appoint separate counsel after conducting a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). We remand this case to the circuit court with directions to conduct a full *Krankel* hearing, including the appointment of new counsel to evaluate defendant's *pro se* claim of ineffective assistance of trial counsel.

¶ 2    Defendant, Dakota Patton, appeals the decision of the Vermilion County trial court denying his request for the appointment of independent counsel to investigate and argue defendant's claim of ineffective assistance of trial counsel. For the reasons that follow, we reverse and remand for the appointment of independent counsel and for further *Krankel* proceedings.

¶ 3                                I. BACKGROUND

¶ 4    This is defendant's second appeal to the appellate court. See *People v. Patton*, 2022 IL App (4th) 210561. In defendant's prior appeal, the Fourth District affirmed the denial of defendant's

motion to suppress evidence (*id.* ¶ 96) but concluded that the record was inadequate to review defendant's claim that the trial court erred by failing to conduct a *Krankel* inquiry into defendant's claims of ineffective assistance of counsel. *Id.* ¶ 115. The Fourth District remanded with instructions for the trial court to inquire into defendant's posttrial claim that he was denied his right to testify. *Id.* ¶ 123. Due to the recitation of facts in the earlier appeal, we borrow liberally from the Fourth District's opinion and recite only the facts necessary for the resolution of this appeal. See *Patton*, 2022 IL App (4th) 210561.

¶ 5      On February 14, 2020, police officers in Danville responded to a call of shots fired. Defendant was a passenger in a pickup truck stopped by the police as a part of the investigation. The driver of the pickup truck, Robert Phillips, consented to a search of the truck. While searching the vehicle, the police found a .380 Ruger pistol that was immediately accessible to defendant. The police took swabs of the pistol grip and trigger for deoxyribonucleic acid (DNA) and sent the swabs to the Illinois State Police Forensic Crime Laboratory.

¶ 6      Defendant was charged with being an armed habitual criminal (count I) (720 ILCS 5/24-1.7(a) (West 2018)), possession of a stolen firearm (count II) (*id.* § 24-3.8), and two counts of possession of a weapon by a felon (counts III and IV) (*id.* § 24-1.1(a)). In December 2020, defendant filed an amended motion to suppress evidence. The trial court denied defendant's motion at the conclusion of the February 2021 hearing.

¶ 7      On June 14, 2021, the trial court held a pretrial hearing and the matter was set for trial on August 10, 2021. The matter was set for a guilty plea on July 1, 2021, but defendant changed his mind and decided to proceed with the trial set on August 10. On July 13, 2021, the State filed a motion for additional discovery and a motion for the consumption of samples. The State's motion noted that law enforcement swabbed the recovered firearm and requested that defendant permit

the taking of buccal swabs of his saliva for comparison with the DNA found on the firearm. The State's motions were granted. On July 30, 2021, 10 days prior to trial, the State disclosed to the court that it had tendered the results of the DNA testing to the defense. At the beginning of August 2021, defense counsel filed various motions *in limine* in preparation for trial. The State likewise filed a motion *in limine* in anticipation of trial.

¶ 8    On August 6, 2021, the case was called for a final pretrial hearing. The trial court ruled on the parties' motions *in limine*, including granting, should defendant testify, the State's request to impeach defendant with prior convictions.

¶ 9    On the morning of the trial, the parties appeared and requested a Rule 402(d) conference (Ill. S. Ct. R. 402(d) (eff. July 1, 2012)) to be followed by a stipulated bench trial. The trial court admonished defendant pursuant to Rule 402(d). *Id.* The court then advised defendant that he had "a right to a jury trial, a jury of 12 people and you have the right to waive that and have a bench trial with the judge only." The court asked defendant if he had discussed this with his attorney, and whether he was willing to waive a jury trial. Defendant responded, "Yeah, from what I understand, yeah." Defendant signed a jury waiver that simply stated that he waived his right to trial by jury and consented to a bench trial.

¶ 10    Following the Rule 402(d) conference, the trial court reconvened and confirmed that the parties were ready to proceed with a stipulated bench trial on count III, one of the counts alleging possession of a weapon by a felon. Defendant was not informed, on the record, that the evidence presented in his bench trial would be based solely upon written stipulations submitted to the court by the parties. Defense counsel noted for the court that defendant was not stipulating to the sufficiency of the evidence, but rather that the defendant was stipulating to the State's evidence, and the defense was doing this for the purpose of "fast tracking" the appeal process. Trial counsel

3

believed that there were grounds for an appeal based on motions previously decided by the court. Three stipulations were submitted to and received by the court.

¶ 11 Relevant to this appeal, the stipulation regarding the driver of the pickup truck established the following: Robert Phillips would testify that on February 14, 2020, he was driving a silver Dodge pickup truck with Indiana plates when he was stopped by the police. Defendant was a passenger in Phillips's truck. Earlier that evening, defendant approached Phillips at his home and told Phillips to give him a ride. Phillips "inferred from various actions that the defendant had a gun on him," and Phillips had "previously seen the defendant in possession of a .380 pistol." Phillips did not possess a gun that day. The stipulation regarding the DNA evidence established that the firearm was tested for DNA and "the DNA found in one portion of swabbing from each of the grip and the trigger/slide were consistent with having originated from" defendant.

¶ 12 Following the presentation of the stipulations, the State rested. Defendant rested without presenting any evidence. The trial court found defendant guilty of the charge in count III. The State dismissed the remaining counts and the matter was set for sentencing.

¶ 13 Three days after the stipulated bench trial, the trial court called a hearing. The court noted that the record from the bench trial did not reflect that defendant was admonished about his right to testify or not to testify. The court placed defendant under oath and the following exchange occurred:

> "THE COURT: [Defendant], as you are aware, you have an absolute right to testify, you have an absolute right not to testify. These are your rights and your rights alone, no one can make you testify if you do not wish to testify, also no one can keep you from testifying if you want to testify. Without going into the substance of the conversations with your lawyer, I am assuming that you have discussed with him the advantages and disadvantages of testifying on your own behalf, is this correct?
>
> [DEFENDANT]: Yes.

4

THE COURT: Your lawyer has indicated to me that after discussions with you it's your personal and voluntary decision that you do not want to testify, is that correct?

[DEFENDANT]: No, that's not true. Uh, uh, I feel like if I were to testify that it could have changed the outcome of my, my verdict, you already found me guilty. With that being said, I feel I've been deprived of my rights to testify. Now, what I understand is that I'm not in agreements with nothing the State got going on or my [defense counsel], I'm not in agreements today. I understand why we here but I'm not taking it, I'm not understanding that. I'm not—

THE COURT: So, so it's your, it's your statement—

[DEFENDANT]: I would have ta—I would have testified during my trial if I could of [*sic*], and I didn't do that.

THE COURT: Did you advise your lawyer that?

[DEFENDANT]: He know that, he sure do.

THE COURT: Okay. Go ahead and take a seat.

[DEFENDANT]: Appreciate it.

THE COURT: Um, at this time I want to have a conference with both attorneys in chambers."

Following a recess, the trial court noted that the matter was set for sentencing in September and adjourned the matter for the day. At the sentencing hearing, no mention was made of defendant's claim, and defendant was ultimately sentenced to 10 years in the Illinois Department of Corrections.

¶ 14 Defendant appealed to the Fourth District. See *Patton*, 2022 IL App (4th) 210561. After affirming the trial court's ruling on defendant's motion to suppress evidence, the Fourth District addressed defendant's claim that the matter should be remanded so that the trial court could conduct an inquiry pursuant to *Krankel*, 102 Ill. 2d 181. The Fourth District found that, based on the record before it, it could not determine whether defendant asserted a clear claim of ineffective assistance of counsel. Material to making that determination were three unanswered questions:

"(1) what exactly defendant said to his attorney, (2) what his attorney said in response, and (3) at what point in the case, if any, did defendant tell his attorney that he wanted to testify." *Patton*, 2022 IL App (4th) 210561, ¶ 116. Accordingly, the matter was remanded for the trial court to inquire into defendant's *pro se* posttrial claims regarding his right to testify. *Id.* ¶ 123.

¶ 15      On remand, the trial court held a hearing on defendant's claims regarding the denial of his right to testify. The hearing took place on April 20, 2023. At the outset of the hearing, the court placed both defendant and defense counsel under oath. Under questioning from the court, defendant said that prior to trial, he told defense counsel that he wanted to testify, because it would have been "[his] word" against Robert Phillips, the driver of the pickup truck. When asked if it was prior to the day of the trial, defendant stated that he and counsel discussed a bench trial where Phillips would have testified, and that he would have then testified because it would have been his word against Phillips's word. The court, being unclear on the timing of defendant's discussion with defense counsel, asked defendant whether this discussion was right before the trial started or on a prior occasion. Defendant explained that he told defense counsel that he wanted to testify from the time that they demanded a trial. Defendant claimed that he told defense counsel this through letters and over the phone. In response to the court's efforts to narrow the timeframe for these discussions, defendant stated that he did not have a precise date, and that he had not saved copies of the letters that he sent to counsel. Defendant also testified that his phone calls with counsel were recorded. Defendant believed that the outcome of the trial could have been different if he testified. The court told defendant that he did not need to tell the court what his testimony would have been, and defendant acknowledged that statement, and asserted that his testimony could have "brought a different light" to the outcome of the stipulated bench trial. When asked whether he told defense counsel on the day of the trial that he wanted to testify, defendant replied,

"He knew prior to that. *** I ain't had to tell him that day cause he already knew prior to that cause we had phone conversations."

¶ 16    In response to the trial court's inquiry of defense counsel, the following exchange occurred:

"[DEFENSE COUNSEL]: I think it's entirely inaccurate. Some of the facts that are being stated were based on trial preparation, as [defendant] said, and we were contemplating a jury trial to that point and he would be able to testify, but that was while the DNA evidence was still pending. Once [the] DNA evidence came back and it indicated that he had handled the weapon in question then the strategy changed, and we had a motion to suppress that was denied. But I advised him that we had a good case for appeal, and if we wanted to get it to the Appellate Court we could have a stipulated bench trial. I explained to him in a stipulated bench trial there would be no testimony, no presentation of evidence but a stipulation to facts that the State had to make their case and we agreed to go to the stipulated bench trial under those terms. [Defendant] was advised that there—once again, he wouldn't testify in this matter because of the nature of a stipulated bench trial, and I believe he understood his rights to testify or not. Because previously on July 1st he had intended to plea on this matter and I advised him of his rights pursuant to Supreme Court Rule 402 which included his right to testify or not based upon his choice.
So in this particular matter I think [defendant] knew full well there would be no testimony on his part in a stipulated bench trial.

THE COURT: So if I understand clearly, your position is that the decision that he wouldn't testify, he realized that and that this was a matter of trial strategy?

[DEFENSE COUNSEL]: Yes, sir."

¶ 17    Defendant stated that it cannot "be trial strategy if it's on my sole right to testify" and that defense counsel could not say that it was trial strategy. Defendant explained that there was no doubt that he and counsel discussed that he wanted to testify during "phone conversations two, three days before the trial." Defendant told the court that he did not raise the issue on the day of the trial due to the fact that he thought that he was going to testify because he and defense counsel "had already had this conversation on the phone." Defendant said that he had not changed his mind on testifying from the day that he started pushing for a trial. Defendant acknowledged that he did not want a jury trial after the DNA evidence was provided to the defense, but that he still wanted

7

a bench trial and wanted to testify against Roberts: "I was going to get on the stand like Mr. Phillips was going to get on the stand. [Defense counsel] knew that." Defendant told the court that, on the day he was brought over to discuss his right to testify, defense counsel told him that if he did not agree "to it," then he could take his guilty plea back.

¶ 18    The trial court then asked defense counsel if he had anything further to say, and he responded:

> "[DEFENSE COUNSEL]: Just in regards to the allegations about asking to testify. Once again, it was understood what a stipulated bench trial was. At the time you called it back into the courtroom a number of days later to admonish him and give him admonishments on his right to testify. At that time I spoke to him and I said, well, you don't have to say anything if you don't want to, you could listen to the admonishments, and he says, no, I'm going to say something because I've been reading[,] indicating that he was reading between the time of the guilty verdict and the time he was called back for these admonishments. So these things that he's bringing up regarding the testimony are based, in my opinion, on things he was reading after a guilty verdict in the stipulated bench trial."

The court did not ask any further questions regarding defendant's allegations, and did not offer defendant an opportunity to respond to defense counsel's allegations. The court took the matter under advisement.

¶ 19    The trial court issued a 10-page written order on May 24, 2023. After recounting the history of the case, the trial court made the following findings:

> "1. Defendant was properly advised by his attorney regarding his right to testify or not to testify. [Defense counsel] specifically told defendant because of the nature of a stipulated bench trial defendant would not testify. Defendant, with the understanding he would not testify, knowingly and willfully agreed to proceed with the stipulated bench trial.
>
> 2. After receiving the DNA evidence showing Defendant's DNA was on the weapon in question, the decision to proceed with a stipulated bench trial and to not have Defendant testify was a matter of trial strategy supported by the facts and circumstances in the case.

8

3. Defendant's statements to the Court at the remand hearing established that Defendant never told his attorney or the Court the day of or at the stipulated bench trial that defendant wanted to testify.

4. The trial court specifically asked Defendant before the stipulated bench trial commenced if he was ready to proceed. The defendant, on the record, replied in the affirmative. The transcript from the August 10, 2021[,] stipulated bench trial supports the conclusion Defendant knowingly and voluntarily agreed to proceed with the stipulated bench trial knowing he would not testify.

5. The Defendant's claims of ineffective assistance of counsel lack merit or only pertain to matters of trial strategy.

6. There is no factual basis for Defendant's claim of ineffective assistance of counsel.

7. There is no need to appoint independent counsel to argue Defendant's *pro se* post trial ineffective assistance of counsel claims."

Defendant was notified of the court's decision, and a timely notice of appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant contends that the trial court erred when it failed to appoint new counsel and improperly treated the *Krankel* inquiry as a full and adversarial evidentiary hearing. More specifically, defendant argues that because he presented sufficient facts to establish the potential neglect of his case, the trial court erred by declining to appoint new counsel to represent defendant on his claim of ineffective assistance of counsel. Defendant requests remand with the appointment of counsel. In the alternative, defendant argues the court erred by conducting a "one-sided adversarial" hearing that left an inadequate record from which to objectively and neutrally evaluate the merit of defendant's claim of ineffective assistance. For this reason, defendant asks that the matter be remanded for a new preliminary *Krankel* in front of a new judge. We agree with defendant and reverse and remand for a full *Krankel* hearing.

¶ 22    "A *pro se* posttrial motion alleging ineffective assistance of counsel is governed by the common-law procedure developed by this court in *Krankel*, 102 Ill. 2d 181, and refined by its

9

progeny." *People v. Roddis*, 2020 IL 124352, ¶ 34 (citing *People v. Ayres*, 2017 IL 120071, ¶ 1). The procedure encourages the trial court to fully address these claims and thereby narrow the issues to be addressed on appeal. *Id.* (citing *People v. Jocko*, 239 Ill. 2d 87, 91 (2010)).

¶ 23    "Under the common-law procedure, a *pro se* defendant is not required to file a written motion but need only bring his or her claim to the trial court's attention." *Id.* ¶ 35 (citing *Ayres*, 2017 IL 120071, ¶ 11). "New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel." *Id.* (citing *People v. Moore*, 207 Ill. 2d 68, 77 (2003)). "Rather, when a defendant makes such a claim, the court should first examine the factual basis of the defendant's claim." *Id.* (citing *Moore*, 207 Ill. 2d at 77-78). "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Id.* (citing *Moore*, 207 Ill. 2d at 77-78). "However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.* (citing *Moore*, 207 Ill. 2d at 77-78). "New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position." *Id.* ¶ 36 (citing *Moore*, 207 Ill. 2d at 77-78).

¶ 24    "[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim." *Moore*, 207 Ill. 2d at 77-78. "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Id.* at 78. During this initial inquiry, "some interchange between the trial court and trial counsel regarding facts and circumstances surrounding the allegedly ineffective representation is

10

permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Id.* "Likewise, the court is permitted to discuss the allegations with [the] defendant." *Ayres*, 2017 IL 120071, ¶ 12. "[T]he purpose of *Krankel* is best served by having a neutral trier of fact initially evaluate the claims at the preliminary *Krankel* inquiry without the State's adversarial participation, creating an objective record for review." *People v. Jolly*, 2014 IL 117142, ¶ 46. During a preliminary *Krankel* inquiry, "a trial court must be able to consider the merits *in their entirety* when determining whether to appoint new counsel on a *pro se* posttrial claim of ineffective assistance of counsel." (Emphasis in original.) *Roddis*, 2020 IL 124352, ¶ 61. A proper "preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding." *Jolly*, 2014 IL 117142, ¶ 38. The question of whether the trial court conducted a proper *Krankel* inquiry is a legal question that is reviewed *de novo*. *People v. Jackson*, 2020 IL 124112, ¶ 98.

¶ 25    As noted above, defendant contends the trial court erred by treating the preliminary *Krankel* hearing as an adversarial evidentiary hearing on the merits of defendant's claim and denying him representation in arguing that claim. Defendant notes that while the trial court asked defendant questions designed to elicit facts about his complaint, the court did not ask defense counsel about the facts, and instead only asked for his "response to the allegation." Defendant contends this allowed defense counsel to argue that defendant's allegations were "entirely inaccurate," and that not only had he properly advised defendant, but that defendant understood that he would not testify. Defendant also complains that the court gave defense counsel the final word, thereby allowing defense counsel to suggest that defendant had been reading materials after the guilty verdict, insinuating that defendant's claim was the result of the outcome of the trial. Defendant argues that defense counsel's opinions sought to justify his actions contrary to

defendant's position, thereby creating the very conflict that the appointment of new counsel under *Krankel* is intended to avoid.

¶ 26    The State responds that, because the State did not participate in the hearing, the hearing was not adversarial in nature. We acknowledge that the *Krankel* progeny discussing the impropriety of an adversarial preliminary *Krankel* hearing address circumstances where the adversarial nature of the hearing is based upon the State's participation in the hearing. See, *e.g.*, *Jackson*, 2020 IL 124112; *Jolly*, 2014 IL 117142. We are not convinced, however, that the only test for whether a hearing has become adversarial is the level of the State's participation.

¶ 27    During a preliminary *Krankel* inquiry, the trial court must examine the factual basis of a defendant's claim of ineffective assistance. *Roddis*, 2020 IL 124352, ¶ 35. As a part of that process, the court may need to question defendant's counsel regarding the facts and circumstances surrounding the defendant's allegations. *Moore*, 207 Ill. 2d at 78. However, the trial court must ask its questions in a fair and impartial manner. *In re Maher*, 314 Ill. App. 3d 1088, 1097 (2000) ("A trial court may, in its discretion, question witnesses to elicit the truth or clarify material issues that seem obscure as long as it does so in a fair and impartial manner."). The propriety of a judge's examination is dependent on the individual circumstances of the case and normally rests within the discretion of the court. *People v. Wesley*, 18 Ill. 2d 138, 155 (1959). However, it must not depart from its function as an impartial tribunal and assume the role of an advocate. *People v. Evans*, 2017 IL App (1st) 150091, ¶ 24.

¶ 28    We agree with defendant that the preliminary *Krankel* inquiry in this matter went beyond an impartial hearing and became adversarial in nature. First, trial counsel started his testimony with the argument that defendant's version of the events was "entirely inaccurate." Although counsel presented the trial court with a narrative explaining his version of events, counsel went

beyond the facts and offered his personal opinion regarding what he believed defendant knew in regard to defendant's claim that he did not understand that he would not testify at a stipulated bench trial. Defense counsel's claims were in direct opposition to defendant's contentions.

¶ 29    Second, after trial counsel gave the court his response to defendant's allegations, the trial court asked counsel a leading question: "So if I understand clearly, your position is that the decision that [defendant] wouldn't testify, he realized that and that this was a matter of trial strategy?" Defense counsel answered, "Yes, sir." "Leading questions are, by definition, suggestive. A 'leading question' is one 'that suggests the answer to the person being interrogated; espec[ially] a question that may be answered by a mere "yes" or "no." ' " *People v. Miles*, 351 Ill. App. 3d 857, 866 (2004) (quoting Black's Law Dictionary 897 (7th ed. 1999)). It would appear that the purpose behind the court's question was to elicit an answer from trial counsel that would allow the court to characterize defendant's claim as a matter of strategy. While the trial court can ask questions to elicit the truth or to seek clarity on a material issue, a leading question designed to elicit a specific answer on the ultimate issue that is contrary to defendant's interest crosses the line into the realm of advocacy. As noted above, although the court is allowed to question witnesses, it must not depart from its function as an impartial tribunal and assume the role of an advocate. *Evans*, 2017 IL App (1st) 150091, ¶¶ 24-25.

¶ 30    Third, we find the trial court further erred by allowing defense counsel to have the last word on the subject. It is axiomatic that, during a preliminary *Krankel* hearing, a defendant has the burden of persuading the trial court that there is some evidence that supporting his claim that trial counsel neglected defendant's case. " '[W]here a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter.' " *McCaley v. Petrovic*, 2024 IL App (1st) 230918, ¶ 63

13

(quoting *Flanagan v. Redondo*, 231 Ill. App. 3d 956, 967 (1991)). "Rebuttal evidence is evidence that tends to explain, repel, contradicts, counteract, or disprove facts placed in evidence by an adverse party." *Id.* (citing *Hall v. Northwestern University Medical Clinics*, 152 Ill. App. 3d 716, 721 (1987)). Here, defendant was not given the opportunity to respond to or rebut defense counsel's insinuation that defendant's reading on the subject matter after the verdict was based upon a case of buyer's remorse.

¶ 31    While we acknowledge that while the court made an effort to provide defendant with the opportunity to express his complaint, it is critical to remember that, at this stage of the proceedings, defendant was attempting to represent himself *pro se* and the court was supposed to be assessing the need for *Krankel* counsel in a "neutral and nonadversarial" manner. *Jolly*, 2014 IL 117142, ¶ 38. Although the trial court's initial inquiry into this matter was appropriate, we find that the court exceeded the limits of an appropriate preliminary *Krankel* inquiry by asking defense counsel a leading question regarding his rationale for proceeding with the stipulated bench trial. We find the court further erred by allowing defense counsel to have the last word on the subject. Defendant, by making an allegation of ineffective assistance, had to demonstrate to the court that his allegations showed possible neglect of his case. *Roddis*, 2020 IL 124352, ¶ 35. When given the opportunity, defendant disagreed with trial counsel factually as to what transpired during their conversations about defendant's desire to exercise his right to testify. Defendant was not given the opportunity to respond to or rebut defense counsel's insinuation that defendant's reading on the subject matter was based upon a case of buyer's remorse brought on by the adverse ruling following the stipulated bench trial.

¶ 32    For these reasons, we conclude that this matter must be remanded to the trial court for the appointment of new counsel and a full *Krankel* hearing. New counsel must " 'independently

14

evaluate defendant's *pro se* allegations' and 'present those with merit to the trial court during the second-stage adversarial hearing.' " *People v. Reed*, 2018 IL App (1st) 160609, ¶ 52 (quoting *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 49). "If no meritorious claims are found, *Krankel* counsel should withdraw." *Id.* (citing *Downs*, 2017 IL App (2d) 121156-C, ¶ 51).

¶ 33                                     III. CONCLUSION

¶ 34     For the reasons stated and based upon the trial court's failure to conduct a proper *Krankel* inquiry, we remand for the appointment of new counsel to represent defendant on the merits of his posttrial claims that defense counsel was ineffective and take whatever action appointed counsel deems appropriate. See *People v. Lawson*, 2019 IL App (4th) 180452, ¶¶ 54-55. We take no position on the merits of such claims.

¶ 35     Reversed and remanded for further proceedings.